**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey GRUBBS, Defendant–Appellant.**

No. 03–10311.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2004.

Filed July 26, 2004.

of his premises was invalid under the Fourth Amendment. To resolve Grubbs' claim, we must determine whether a facially defective anticipatory search warrant may be cured by information contained within an affidavit when that affidavit is not presented to the person or persons whose property is to be searched. We answer that question in the negative, and hold that the search of Grubbs' premises violated the Fourth Amendment.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

On April 17, 2002, United States Postal Inspector Gary Welsh ("Welsh") presented an "Application and Affidavit for Anticipatory Search Warrant" to a federal magistrate judge. The application sought authority to conduct a search of Grubbs' residence on the basis of an order Grubbs allegedly placed for a videotape entitled "Lolita Mother and Daughter." Grubbs allegedly ordered the videotape from a website that advertised for sale numerous videos depicting illegal child pornography. Welsh averred that Grubbs sent him a letter which contained $45 in cash and a note stating: "I hope this makes it to you please send film asap thanks Jeff Grubbs." On the basis of this evidence, the magistrate judge issued an anticipatory search warrant. The face of the warrant stated:

> Affidavit(s) having been made before me by _____ who has reason to believe that on the premises known as residence of Jeffrey Grubbs, [Address] as more particularly described in Attachment A to the attached Affidavit, in the Eastern District of California there is now concealed a certain person or property,

Quin Denvir, Federal Defender; Mark J. Reichel, Assistant Federal Defender, Sacramento, CA, for defendant-appellant Jeffrey Grubbs.

McGregor W. Scott, United States Attorney; Camil A. Skipper, Assistant United States Attorney, Sacramento, CA, for appellee the United States of America.

Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Chief Judge.*

REINHARDT, Circuit Judge:

Jeffrey Grubbs appeals following his conditional guilty plea on a charge of receiving a visual depiction of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2252(a)(2). He contends that the district court should have granted his motion to suppress evidence, including his statements, because the anticipatory search warrant that authorized the search

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

1. Grubbs also claims that the statement he gave to officers at the beginning of the search was obtained in violation of *Miranda,* and that

the officers violated Fed.R.Crim.P. 41(d) by failing to show him the warrant at the outset of the search. Our resolution of the principal question in this case makes it unnecessary to resolve these other issues.

namely the records and materials described in Attachment B to the attached Affidavit. I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

As revealed by the "now concealed" language, the inartfully drafted warrant approved by the magistrate was written on a form "forthwith" search warrant.[2] The only indication that the warrant was an anticipatory search warrant was the word "ANTICIPATORY," handwritten at the top of the page above the words "SEARCH WARRANT." The warrant itself did not state what triggering conditions needed to occur in order to make the warrant valid; nor did it state the criminal activity of which Grubbs was suspected.

The warrant relied on a 25-page affidavit to satisfy the specificity and particularity requirements of the Fourth Amendment. According to the affidavit, the warrant would become operative once the videotape Grubbs ordered was "received by a person(s)" and "taken into the residence." Pages five and nineteen of the affidavit set forth these "triggering events," or conditions precedent, upon which a search would become authorized. The affidavit also had two attachments: Attachment A described the premises to be searched; Attachment B listed the items to be seized, including the videotape and packing material, Grubbs' Web TV components, and various other items.

The search took place two days later. At approximately 7:20 A.M., an undercover postal inspector delivered the videotape to Grubbs' residence. Grubbs' wife accepted the delivery of the package, signed for it, and took it into the house. A few minutes later, Postal Inspector Thomas Brucklacher saw Grubbs leaving. At approximately 7:24 A.M., Brucklacher and Inspector Esteban approached Grubbs and, after identifying themselves, told him to remain where he was standing. Grubbs asked Brucklacher why he and the other inspectors were there. Brucklacher did not answer, but instead referred him to Inspector Welsh, who was then approaching the residence. Meanwhile, Inspector Esteban performed a patdown search of Grubbs.

Shortly after Grubbs was detained outside of the house, Inspector Welsh arrived at the premises with a number of other law enforcement personnel. In all, there were ultimately ten officers and inspectors at the scene. Welsh allegedly 9971 announced "Police/Search Warrant" at the front door. Grubbs' wife, Ms. Bradstreet, disputed hearing that announcement, but did testify that she heard a knock and answered the door. Welsh briefly entered the house to help several other officers perform a "protective sweep." During that "protective sweep," the officers searched the house for other people and stopped to prepare sketches of the interior. They permitted Grubbs' children to leave for school after searching their backpacks. After assisting the officers inside, Welsh went back outside to speak with Grubbs, who was on the sidewalk with other officers. Welsh identified himself, and stated either "You know why we're here" or "Do you know why we're here?"[3]

---

2. It is clear that, at the time the warrant was approved, no records or materials were "now concealed" at Grubbs' residence.

3. The record does not establish with certainty whether Welsh asked this as a question or stated it as a matter of fact. Welsh testified that he phrased the words as a statement because "I didn't want to ask any questions prior to *Miranda*." The district court found that it was phrased in the form of a statement, rather than a question. Ultimately, we find it

Grubbs replied "yeah," and said that what the officers were looking for was in the garage. Welsh told Grubbs that he was not under arrest, but that they were there to serve a search warrant, and that they should go inside the house to talk.[4]

Grubbs and Welsh, accompanied by Officer Esteban, entered the house together and sat down at the dining room table. It was not until 7:53 A.M., approximately 30 minutes after the search began, that Welsh presented Grubbs with the search warrant.[5] The copy of the search warrant provided to Grubbs included the two attachments, which described the place to be searched and the items to be seized, but did not include the affidavit that contained the "triggering events" or conditions precedent that would serve to make the warrant operative. Welsh contended that he had a copy of the affidavit with him at all times during the search, and that his team had all read the affidavit on the previous evening. However, the government concedes that the affidavit was not presented to Mr. Grubbs or Ms. Bradstreet, and that no copy of the affidavit was left at the residence following the search.

After the warrant was presented, Welsh reminded Grubbs that he was not under arrest, advised him of his *Miranda* rights, and asked if he understood those rights. Grubbs said that he did and agreed to speak to Welsh. The interview lasted approximately 55 minutes. In it, Grubbs admitted that he had ordered the pornography. He further admitted that he possessed child pornography in various digital forms in his home. At the conclusion of the interview, Grubbs was arrested and handcuffed. The officers seized the videotape in question along with several other items, including Grubbs' computer and several computer diskettes.[6]

Within a few days, a grand jury returned an indictment charging Grubbs with receiving a visual depiction of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2252(a)(2).[7] Grubbs filed a mo-

---

inconsequential whether Welsh spoke the words in the form of a question or a statement, as we decline to reach the *Miranda* issue.

4. The district court did not make an explicit factual finding as to the sequence of events as described in this paragraph. However, to the extent that the district court's decision suggests that the "protective sweep" did not begin until after Welsh had spoken with Grubbs, it is clearly erroneous. Welsh's declaration itself admits that he announced "police/search warrant" at the front door, entered the house with the search team to begin a protective sweep, and only then returned outside to speak with Grubbs.

5. At the evidentiary hearing in the district court, Welsh explained this 30 minute delay as follows:

Well, we had to get in, we talked to his wife, explained to his wife why we were there. I made sure the kids got off to school on time. We checked their backpacks, of course, as per procedures and to make sure nothing was leaving the house. We took care of that. We went in, photographs were taken of the house, sketches, hand drawn sketches of the house had to be made. It took a while to clear things away from the table. We also had to deal with the fact that narcotics paraphernalia were found on the defendant plus on the table that we were about to do the interview on. So all told, I think all those preliminaries took about 30 minutes.

6. The actual list of evidence seized is unimportant in this case, as the government has stipulated that the only physical evidence it intended to introduce at trial was the videotape.

7. That section makes illegal the knowing receipt or distribution of "any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or ... any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." *Id.*

tion to suppress evidence, in which he challenged the admissibility of all of the seized evidence and his statements to Welsh. Grubbs made three principal claims: (1) that the agents' failure to present the affidavit to Grubbs or his wife rendered the warrant inoperative; (2) that the agents violated Fed.R.Crim.P. 41(d) by failing to present the search warrant at the outset of the search; and (3) that his statement that the video was in the garage should be excluded as the product of an impermissible custodial interrogation. The first and third claims alleged constitutional violations.

Following an evidentiary hearing, the district court denied the motion to suppress in a written order. With respect to Grubbs' first claim, the Fourth Amendment claim, the district court held that the anticipatory warrant could constitutionally be executed even though it failed to designate the triggering event for the implementation of the anticipatory search. It did so on the basis that the warrant incorporated the affidavit by reference, and that the affidavit was in the immediate presence of the officers while they searched Grubbs' residence. The court did not consider the officers' failure to present the affidavit to the residents of the home to be searched as constituting a constitutional defect. The district judge admitted that "it is logical that officers would be required to actually present the affidavit setting forth the triggering event to the people whose property they are searching in order to provide those people with information regarding the parameters of the search." However, after concluding that no case from our circuit had ruled on the precise question, the court declined to apply that logic "in the absence of specific

guidance from the Ninth Circuit." [8] Thus, it upheld the search, even though none of the persons whose residence was searched were shown the affidavit that identified the triggering event.

After filing a motion for reconsideration, which the district court denied, Grubbs entered a conditional guilty plea to the sole charge of the indictment—receiving a visual depiction of a minor engaged in sexually explicit conduct. He reserved his right to appeal the denial of his motion to suppress. The district court sentenced him to thirty-three months imprisonment, a three-year term of supervised release, a fine of $3,700, and a $100 special assessment. Grubbs timely appealed.

## II. DISCUSSION

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The requirement that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized" is most often described as the "particularity requirement." As the Supreme Court has recently explained, that requirement "applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh v. Ramirez*, 540 U.S. 551, ——, 124 S.Ct. 1284, 1291, 157 L.Ed.2d 1068 (2004).

The *Groh* Court considered a warrant that "failed to identify any of the items" to be seized. 540 U.S. at ——, 124 S.Ct. at 1288. Despite the fact that the officers conducting the search had presented to the reviewing magistrate a detailed affidavit

**8.** For reasons we need not discuss here, the district court denied Grubbs' Rule 41(d) and

*Miranda* claims as well.

setting forth sufficient probable cause for the search, the warrant itself did not explicitly "incorporate by reference the itemized list [of things to be seized] contained in the application." *Id.* The officers in *Groh* left the residents of the searched home a copy of the search warrant, "but not a copy of the application, which had been sealed." *Id.* at 1289. The Court found that the officers' conduct directly conflicted with the purpose of the Fourth Amendment's particularity requirement:

> The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. And for good reason: "The presence of a search warrant serves a high function," and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. . . .
>
> . . . .
>
> We have long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches. A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."

*Groh*, 540 U.S. at ————, ——, 124 S.Ct. at 1289–90, 1292 (citations omitted).

Our cases have long been in accord with the Supreme Court's reasoning in *Groh.* We have held that a search warrant is invalid when it does not contain a specific description of the types of items to be seized. *See, e.g., United States v. Spilotro,* 800 F.2d 959, 963–64 (9th Cir.1986). And, while we have permitted facially defective warrants to be "cured" by an affidavit that (a) is incorporated within the four corners of the warrant and (b) "accompanies" the warrant, *see United States v. Van Damme,* 48 F.3d 461, 466 (9th Cir.1995), we have unequivocally held that the defect is not cured if the officers fail to present the affidavit—that is, an affidavit that is not shown to the persons being subjected to the search does not have a curative effect on a facially defective warrant. *See United States v. McGrew,* 122 F.3d 847, 849–50 (9th Cir.1997).

As we explained in *McGrew,* we require affidavits to accompany warrants not only in order to limit officers' discretion in conducting the search, but also in order to *"inform the person subject to the search what items the officers executing the warrant can seize." Id.* at 850 (quoting *United States v. Hayes,* 794 F.2d 1348, 1355 (9th Cir.1986)) (emphasis in *McGrew* ). If the officers conducting the search were not required to present the affidavit to the residents of the house being searched, law enforcement personnel would be free to search as they like, and homeowners and others would have no effective way to ensure that the search of their premises conformed to the lawful constraints approved by an impartial magistrate. *See id.* at 850; *see also Ramirez v. Butte–Silver Bow Cty.,* 298 F.3d 1022, 1026 (9th Cir.2002) ("When officers fail to attach the affidavit to a general warrant, the search is rendered illegal because the warrant neither limits their discretion nor gives the homeowner the required information."), *aff'd Groh,* 540 U.S. at ——, 124 S.Ct. at 1295; *Ramirez,* 298 F.3d at 1027 ("To stand a real chance of policing the officers' conduct, individuals must be able to read and point to the language of a proper warrant.").

■ Our cases have similarly held, without exception, that the particularity requirement of the Fourth Amendment applies with full force to the conditions precedent to an anticipatory search war-

rant. An anticipatory search warrant is not valid until the occurrence of one or more "triggering events"—in other words, the predicted future events that the magistrate determines will create sufficient probable cause to justify the search. And, "when a warrant's execution is dependent on the occurrence of one or more conditions, the warrant itself must state the conditions precedent to its execution and these conditions must be clear, explicit, and narrow." *United States v. Hotal,* 143 F.3d 1223, 1226 (9th Cir.1998). The rationale for this rule is simple: "a warrant conditioned on a future event presents a potential for abuse above and beyond that which exists in more traditional settings: inevitably, the executing agents are called upon to determine when and where the triggering event specified in the warrant has actually occurred." *Id.* at 1226 (quoting *United States v. Ricciardelli,* 998 F.2d 8, 12 (1st Cir.1993)). Application of the particularity requirement is "the only way effectively to safeguard against unreasonable and unbounded searches." *Id.* at 1227.

[2] We have, however, permitted the triggering conditions of an anticipatory search warrant to appear either on the face of the warrant itself, or in the "attachments[to the warrant] that those executing the search maintain in their immediate possession in order to guide their actions and *to provide information to the person whose property is being searched." Id.* (emphasis added); *see also United States v. Vesikuru,* 314 F.3d 1116, 1120 (9th Cir. 2002) ("It is important to emphasize that we have not held that the condition precedent must be stated within the four corners of the warrant itself."). Still, while an affidavit may qualify as a valid curing "attachment" to an otherwise defective warrant, it counts as such only when the affidavit actually "accompanies" the warrant. As we explained in *Hotal,*

The first requirement, that the application but *not* the warrant itself identify the triggering event, does little if anything to limit the discretion of the agents executing the warrant or *to inform the subject of the search whether it was authorized,* if the affidavit does not accompany the warrant. Indeed, that the applicant and the magistrate may understand the parameters of the search has no bearing on whether the officers executing the warrant do, or *whether the person to be searched is properly advised of their authority.*

*Hotal,* 143 F.3d at 1227 (emphasis added).

The question in this case is whether a curative affidavit that contains the conditions precedent to an anticipatory search actually "accompanies" the warrant when the affidavit is not shown to the person or persons being subjected to the search. Given our prior holdings, and the Court's most recent decision in *Groh,* the district court was correct when it opined that "it is logical that officers would be required to actually present the affidavit setting forth the triggering event to the people whose property they are searching in order to provide those people with information regarding the parameters of the search." Likewise, the district court was right to conclude that the "underlying reasoning" of *Hotal* supports the rule that "the affidavit setting forth the triggering event for an anticipatory warrant must be presented to the people whose property is being searched." The district court, however, was unwilling to impose such a requirement in this case without further explicit guidance from us.

██  We believe that our prior cases unambiguously require officers to present any curative document—be it an affidavit, attachment, or other instrument that supplies the particularity and specificity demanded by the Fourth Amendment—to

the persons whose property is to be subjected to the search. To the extent that there is any question that our cases have adopted that rule, we do so explicitly now. Anticipatory search warrants are invalid absent "clear, explicit, and narrow" triggering conditions. *See Hotal,* 143 F.3d at 1226. Those triggering conditions may be listed either in the warrant itself or in attached documents, but whatever document contains them must be presented to the person whose property is being searched. Absent such presentation, individuals would "stand [no] real chance of policing the officers' conduct," because they would have no opportunity to check whether the triggering events by which the impartial magistrate has limited the officers' discretion have actually occurred. *See Ramirez,* 298 F.3d at 1027. In short, unless the officers "present" the document containing the triggering events necessary to render an anticipatory search warrant operative, the search warrant is constitutionally invalid. In the absence of a proper presentation, "the search is rendered illegal because the warrant neither limits [the officers'] discretion nor gives the homeowner the required information." *Id.* at 1026.

In this case, there is no dispute that the officers failed to present the affidavit—the only document in which the triggering conditions were listed—to Grubbs or Bradstreet. At no point before, during, or after the search did the officers show or read the affidavit to either of them. The copy of the warrant left with Ms. Bradstreet at the conclusion of the search did not include the affidavit, nor did it otherwise include a list of the triggering conditions. The warrant was therefore inoperative, and the search was illegal.[9]

■ Absent a constitutionally valid warrant, the officers lacked the legal authority to enter the defendant's home. The fact that the search ultimately may have been conducted in a manner consistent with the application for the warrant is irrelevant. "If a warrant fails for lack of particularity or specificity, it is simply unconstitutional—without regard to what actually occurred." *Hotal,* 143 F.3d at 1227. Nor is it significant that the officers may have possessed curative documents during the search, unless those documents were presented to the owners or occupants of the property: "that the applicant and the magistrate may understand the parameters of the search has no bearing on whether ... the person to be searched is properly advised of [the officers'] authority." *Id.* at 1227. We therefore conclude that the officers in this case did not execute a constitutionally valid warrant, and that they, in effect, conducted a warrantless search. *See id.* at 1228 & n. 7. As a result, *all* evidence obtained during that search, and following Welsh's announcement of "Police/Search Warrant," must be suppressed. *See id.* at 1228 ("Because we conclude that the initial entry was impermissible and that the evidence seized pursuant to the warrant must be suppressed, *all* of the other evidence seized must also be suppressed. Consent to search that is given after an illegal entry is tainted and invalid under the Fourth Amendment."). "All evidence" includes all of the evidence seized after the initial entry, as well as all of Grubbs' statements, all of which were taken either during the illegal entry or as a direct causal result of it. *See United States v. Crawford,* 372 F.3d 1048, at 1053–54, 2004 WL 1375521, at *4 (9th Cir. June 21, 2004) (en banc) (holding that the

---

9. We need not decide whether the warrant and curative material must be shown to the persons whose property is being searched *prior* to the officers' entry into the home. We do note, however, that "absent exigent circumstances, if a person is present at the search of her premises, Rule 41(d) requires officers to give her a complete copy of the warrant at the outset of the search." *United States v. Gantt,* 194 F.3d 987, 994 (9th Cir.1999).

Fourth Amendment's exclusionary rule "applies to statements and evidence obtained as a product of illegal searches and seizures" whenever there is a "causal connection between the illegal conduct and the evidence sought to be suppressed"); *see also Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.").[10]

## III. CONCLUSION

The failure to present the affidavit designating the triggering events or condi-

tions precedent to the operability of the search warrant rendered the warrant constitutionally invalid and the search illegal. Because Grubbs entered a conditional guilty plea, we are required to remand and allow him to withdraw his plea if he elects to do so. *See United States v. Mejia,* 69 F.3d 309, 316 n. 8 (9th Cir.1995). We therefore reverse the denial of Grubbs' suppression motion and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

10. It might be argued that because the officers had probable cause to perform the search and arrest Grubbs in the first instance, the statements Grubbs made to the officers were admissible. *See United States v. Ladum,* 141 F.3d 1328, 1337 (9th Cir.1998) (en banc). This argument fails for three reasons. First, the government did not make this argument, either in its briefs or at oral argument, despite the fact that Grubbs had argued from the start that suppression of all evidence and statements would be required in the event that we found a Fourth Amendment violation. The argument is therefore waived. *See Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir.1999).

Second, statements that are taken from a homeowner in the course of an illegal search of his home must be suppressed. *See New York v. Harris,* 495 U.S. 14, 20–21, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). All of Grubbs' statements were made during the course of the unconstitutional search. Inspector Welsh's declaration establishes that he announced "Police/Search Warrant" at the door prior to the time the officers entered to conduct their "protective sweep" and prior to the time Grubbs made his statement regarding the location of the video. *See supra* note 4. No evidence had been obtained or noticed in plain view at that point. Under *Hotal,* all evidence seized after Welsh's "search warrant" announcement at the door must be suppressed, 143 F.3d at 1228; and, under *Harris,* this includes all statements made during the

course of the search, 495 U.S. at 20–21, 110 S.Ct. 1640.

Third, application of the exclusionary rule depends on the facts of each case. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In this case, the fruits (Grubbs' statements) are "directly or indirectly attributable to the constitutional violation," *Crawford,* 372 F.3d 1048, 2004 WL 1375521, at *8, and thus the pertinent causal connection exists. The illegality was the officers' failure to present to Grubbs information that would have informed him about the reasons for the search such that he could have challenged the entry if he so desired. *See Ramirez,* 298 F.3d at 1026–27, *aff'd Groh,* 540 U.S. at ——, 124 S.Ct. at 1295. Inspector Welsh's declaration "You know why we're here" presumed that Grubbs knew the very information that the affidavit was supposed to provide. Were we to validate this type of investigative technique, we would be encouraging officers to evade the particularity requirement of the Fourth Amendment by obtaining potentially incriminating statements of understanding from search subjects. Therefore, not only is the "challenged evidence [ ] in some sense the product of illegal governmental activity," *see Ladum,* 141 F.3d at 1337 (quoting *Harris,* 495 U.S. at 19, 110 S.Ct. 1640), but application of the exclusionary rule "serve[s] the purpose of the rule that made [the search] illegal." *Harris,* 495 U.S. at 20, 110 S.Ct. 1640.