(Slip Opinion)     OCTOBER TERM, 2005     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* GRUBBS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 04–1414.  Argued January 18, 2006—Decided March 21, 2006

A Magistrate Judge issued an "anticipatory" search warrant for respondent Grubbs' house based on a federal officer's affidavit.  The affidavit explained that the warrant would not be executed until a parcel containing a videotape of child pornography—which Grubbs had ordered from an undercover postal inspector—was received at, and physically taken into, the residence.  The affidavit also referred to two attachments describing the residence and the items to be seized. After the package was delivered and the search commenced, Grubbs was given a copy of the warrant, which included the attachments but not the supporting affidavit.  When he admitted ordering the videotape, he was arrested, and the videotape and other items were seized. Following his indictment for receiving child pornography, see 18 U. S. C. §2252(a)(2), Grubbs moved to suppress the seized evidence, arguing, *inter alia,* that the warrant was invalid because it failed to list the triggering condition.  The District Court denied the motion, and Grubbs pleaded guilty.  The Ninth Circuit reversed, concluding that the warrant ran afoul of the Fourth Amendment's particularity requirement, which, under Circuit precedent, applied to the conditions precedent to an anticipatory warrant.

*Held:*

    1. Anticipatory warrants are not categorically unconstitutional under the Fourth Amendment's provision that "no Warrants shall issue, but upon probable cause."  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois* v. *Gates,* 462 U. S. 213, 238.  When an anticipatory warrant is issued, the fact that the contraband is not presently at the place described is immaterial, so long as there is probable cause to believe it will be there when the warrant is executed.

Syllabus

Anticipatory warrants are, therefore, no different in principle from ordinary warrants: They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed. Where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met, but also to the likelihood that the condition *will* be met, and thus that a proper object of seizure will be on the described premises. Here, the occurrence of the triggering condition— successful delivery of the videotape—would plainly establish probable cause for the search, and the affidavit established probable cause to believe the triggering condition would be satisfied. Pp. 3–7.

2. The warrant at issue did not violate the Fourth Amendment's particularity requirement. The Amendment specifies only two matters that the warrant must "particularly describ[e]": "the place to be searched" and "the persons or things to be seized." That language is decisive here; the particularity requirement does not include the conditions precedent to execution of the warrant. Cf. *Dalia* v. *United States,* 441 U. S. 238, 255, 257. Respondent's two policy rationales— that setting forth the triggering condition in the warrant itself is necessary (1) to delineate the limits of the executing officer's power and (2) to allow the individual whose property is searched or seized to police the officer's conduct—find no basis in either the Fourth Amendment or Federal Rule of Criminal Procedure 41. Pp. 7–9.

377 F. 3d 1072 and 389 F. 3d 1306, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, and BREYER, JJ., joined, and in which STEVENS, SOUTER, and GINSBURG, J., joined as to Parts I and II. SOUTER, J., filed an opinion concurring in part and concurring in the judgment, in which STEVENS and GINSBURG, JJ., joined. ALITO, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of thfe United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–1414

_____

## UNITED STATES, PETITIONER *v.* JEFFREY GRUBBS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 21, 2006]

JUSTICE SCALIA delivered the opinion of the Court.

Federal law enforcement officers obtained a search warrant for respondent's house on the basis of an affidavit explaining that the warrant would be executed only after a controlled delivery of contraband to that location.  We address two challenges to the constitutionality of this anticipatory warrant.

I

Respondent Jeffrey Grubbs purchased a videotape containing child pornography from a Web site operated by an undercover postal inspector.  Officers from the Postal Inspection Service arranged a controlled delivery of a package containing the videotape to Grubbs' residence.  A postal inspector submitted a search warrant application to a Magistrate Judge for the Eastern District of California, accompanied by an affidavit describing the proposed operation in detail.  The affidavit stated:

"Execution of this search warrant will not occur unless and until the parcel has been received by a person(s) and has been physically taken into the residence . . . .  At that time, and not before, this search warrant will be executed by me and other United

States Postal inspectors, with appropriate assistance from other law enforcement officers in accordance with this warrant's command." App. to Pet. for Cert. 72a.

In addition to describing this triggering condition, the affidavit referred to two attachments, which described Grubbs' residence and the items officers would seize. These attachments, but not the body of the affidavit, were incorporated into the requested warrant. The affidavit concluded:

> "Based upon the foregoing facts, I respectfully submit there exists probable cause to believe that the items set forth in Attachment B to this affidavit and the search warrant, will be found [at Grubbs' residence], which residence is further described at Attachment A." *Ibid.*

The Magistrate Judge issued the warrant as requested. Two days later, an undercover postal inspector delivered the package. Grubbs' wife signed for it and took the unopened package inside. The inspectors detained Grubbs as he left his home a few minutes later, then entered the house and commenced the search. Roughly 30 minutes into the search, Grubbs was provided with a copy of the warrant, which included both attachments but not the supporting affidavit that explained when the warrant would be executed. Grubbs consented to interrogation by the postal inspectors and admitted ordering the videotape. He was placed under arrest, and various items were seized, including the videotape.

A grand jury for the Eastern District of California indicted Grubbs on one count of receiving a visual depiction of a minor engaged in sexually explicit conduct. See 18 U. S. C. §2252(a)(2). He moved to suppress the evidence seized during the search of his residence, arguing as relevant here that the warrant was invalid because it failed to

list the triggering condition. After an evidentiary hearing, the District Court denied the motion. Grubbs pleaded guilty, but reserved his right to appeal the denial of his motion to suppress.

The Court of Appeals for the Ninth Circuit reversed. 377 F. 3d 1072, amended, 389 F. 3d 1306 (2004). Relying on Circuit precedent, it held that "the particularity requirement of the Fourth Amendment applies with full force to the conditions precedent to an anticipatory search warrant." 377 F. 3d, at 1077–1078 (citing *United States* v. *Hotal*, 143 F. 3d 1223, 1226 (CA9 1998)). An anticipatory warrant defective for that reason may be "cur[ed]" if the conditions precedent are set forth in an affidavit that is incorporated in the warrant and "presented to the person whose property is being searched." 377 F. 3d, at 1079. Because the postal inspectors "failed to present the affidavit—the only document in which the triggering conditions were listed"—to Grubbs or his wife, the "warrant was . . . inoperative, and the search was illegal." *Ibid.* We granted certiorari. 545 U. S. \_\_\_ (2005).

## II

Before turning to the Ninth Circuit's conclusion that the warrant at issue here ran afoul of the Fourth Amendment's particularity requirement, we address the antecedent question whether anticipatory search warrants are categorically unconstitutional.[1] An anticipatory warrant is "a warrant based upon an affidavit showing probable

---

[1] This issue is "predicate to an intelligent resolution of the question presented." *Ohio* v. *Robinette,* 519 U. S. 33, 38 (1996) (internal quotation marks omitted). It makes little sense to address what the Fourth Amendment requires of anticipatory search warrants if it does not allow them at all. Cf. *Wilkinson* v. *Austin,* 545 U. S. \_\_\_, \_\_\_ (2005) (slip op., at 9) (addressing whether inmates had a liberty interest in avoiding assignment to a "Supermax" prison, despite the State's concession that they did, because "[w]e need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest").

cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 W. LaFave, Search and Seizure §3.7(c), p. 398 (4th ed. 2004). Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called "triggering condition." The affidavit at issue here, for instance, explained that "[e]xecution of th[e] search warrant will not occur unless and until the parcel [containing child pornography] has been received by a person(s) and has been physically taken into the residence." App. to Pet. for Cert. 72a. If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued. Grubbs argues that for this reason anticipatory warrants contravene the Fourth Amendment's provision that "no Warrants shall issue, but upon probable cause."

We reject this view, as has every Court of Appeals to confront the issue, see, *e.g.*, *United States* v. *Loy*, 191 F. 3d 360, 364 (CA3 1999) (collecting cases). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates,* 462 U. S. 213, 238 (1983). Because the probable-cause requirement looks to whether evidence will be found *when the search is conducted*, all warrants are, in a sense, "anticipatory." In the typical case where the police seek permission to search a house for an item they believe is already located there, the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed. See *People* v. *Glen,* 30 N. Y. 2d 252, 258, 282 N. E. 2d 614, 617 (1972) ("[P]resent possession is

only probative of the likelihood of future possession.").[2]
The anticipatory nature of warrants is even clearer in the
context of electronic surveillance. See, *e.g.*, *Katz* v. *United
States,* 389 U. S. 347 (1967). When police request approval
to tap a telephone line, they do so based on the probability
that, during the course of the surveillance, the subject *will*
use the phone to engage in crime-related conversations.
The relevant federal provision requires a judge authoriz-
ing "interception of wire, oral, or electronic communica-
tions" to determine that "there is probable cause for belief
that particular communications concerning [one of various
listed offenses] *will be obtained* through such intercep-
tion." 18 U. S. C. §2518(3)(b) (emphasis added); see also
*United States* v. *Ricciardelli*, 998 F. 2d 8, 11, n. 3 (CA1
1993) ("[T]he magistrate issues the warrant on the basis of
a substantial probability that crime-related conversations
will ensue."). Thus, when an anticipatory warrant is
issued, "the fact that the contraband is not presently
located at the place described in the warrant is immate-
rial, so long as there is probable cause to believe that it
will be there when the search warrant is executed."
*United States* v. *Garcia*, 882 F. 2d 699, 702 (CA2 1989)
(quoting *United States* v. *Lowe*, 575 F. 2d 1193, 1194 (CA6
1978); internal quotation marks omitted).

––––––––––

[2] For this reason, probable cause may cease to exist after a warrant is
issued. The police may learn, for instance, that contraband is no longer
located at the place to be searched. See, *e.g.*, *United States* v. *Bowling*,
900 F. 2d 926, 932 (CA6 1990) (recognizing that a fruitless consent
search could "dissipat[e] the probable cause that justified a warrant").
Or the probable-cause showing may have grown "stale" in view of the
time that has passed since the warrant was issued. See *United States*
v. *Wagner*, 989 F. 2d 69, 75 (CA2 1993) ("[T]he facts in an affidavit
supporting a search warrant must be sufficiently close in time to the
issuance of the warrant and the subsequent search conducted so that
probable cause can be said to exist as of the time of the search and not
simply as of some time in the past."); see also *Sgro* v. *United States,* 287
U. S. 206, 210–211 (1932).

Anticipatory warrants are, therefore, no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed. It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met. (If that were the extent of the probability determination, an anticipatory warrant could be issued for every house in the country, authorizing search and seizure *if* contraband should be delivered—though for any single location there is no likelihood that contraband will be delivered.) Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises. In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates, supra*, at 238, but also that there is probable cause to believe the triggering condition *will occur*. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination. See *Garcia, supra*, at 703.

In this case, the occurrence of the triggering condition—successful delivery of the videotape to Grubbs' residence—would plainly establish probable cause for the search. In addition, the affidavit established probable cause to believe the triggering condition would be satisfied. Although it is possible that Grubbs could have refused delivery of the videotape he had ordered, that was unlikely. The

Magistrate therefore "had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates,* 462 U. S., at 238–239 (quoting *Jones* v. *United States,* 362 U. S. 257, 271 (1960)).

## III

The Ninth Circuit invalidated the anticipatory search warrant at issue here because the warrant failed to specify the triggering condition. The Fourth Amendment's particularity requirement, it held, "applies with full force to the conditions precedent to an anticipatory search warrant." 377 F. 3d, at 1077–1078.

The Fourth Amendment, however, does not set forth some general "particularity requirement." It specifies only two matters that must be "particularly describ[ed]" in the warrant: "the place to be searched" and "the persons or things to be seized." We have previously rejected efforts to expand the scope of this provision to embrace unenumerated matters. In *Dalia* v. *United States,* 441 U. S. 238 (1979), we considered an order authorizing the interception of oral communications by means of a "bug" installed by the police in the petitioner's office. The petitioner argued that, if a covert entry is necessary to install such a listening device, the authorizing order must "explicitly set forth its approval of such entries before the fact." *Id.*, at 255. This argument fell before the "'precise and clear'" words of the Fourth Amendment: "Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed." *Id.*, at 255 (quoting *Stanford* v. *Texas,* 379 U. S. 476, 481 (1965)), 257. The language of the Fourth Amendment is likewise decisive here; its particularity requirement does not include the conditions precedent to execution of the warrant.

Respondent, drawing upon the Ninth Circuit's analysis below, relies primarily on two related policy rationales. First, he argues, setting forth the triggering condition in the warrant itself is necessary "to delineate the limits of the executing officer's power." Brief for Respondent 20. This is an application, respondent asserts, of the following principle: "[I]f there is a precondition to the valid exercise of executive power, that precondition must be particularly identified on the face of the warrant." *Id.*, at 23. That principle is not to be found in the Constitution. The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential "precondition to the valid exercise of executive power." Much less does it require description of a triggering condition.

Second, respondent argues that listing the triggering condition in the warrant is necessary to "'assur[e] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.*, at 19 (quoting *United States* v. *Chadwick,* 433 U. S. 1, 9 (1977)). The Ninth Circuit went even further, asserting that if the property owner were not informed of the triggering condition, he "would 'stand [no] real chance of policing the officers' conduct.'" 377 F. 3d, at 1079 (quoting *Ramirez* v. *Butte-Silver Bow County,* 298 F. 3d 1022, 1027 (CA9 2002)). This argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search. See 377 F. 3d, at 1079, n. 9. In fact, however, neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure imposes such a requirement. See *Groh* v. *Ramirez,* 540 U. S. 551, 562, n. 5 (2004). "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description

does not protect an interest in monitoring searches." *United States* v. *Stefonek*, 179 F. 3d 1030, 1034 (CA7 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police." *Wong Sun* v. *United States,* 371 U. S. 471, 481–482 (1963), and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages.

\*  \*  \*

Because the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself, the Court of Appeals erred in invalidating the warrant at issue here. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

—————

No. 04–1414

—————

## UNITED STATES, PETITIONER *v.* JEFFREY GRUBBS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 21, 2006]

JUSTICE SOUTER, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, concurring in part and concurring in the judgment.

I agree with the Court that anticipatory warrants are constitutional for the reasons stated in Part II of the Court's opinion, and I join in the disposition of this case. But I would qualify some points made in Part III.

The Court notes that a warrant's failure to specify the place to be searched and the objects sought violates an express textual requirement of the Fourth Amendment, whereas the text says nothing about a condition placed by the issuing magistrate on the authorization to search (here, delivery of the package of contraband). That textual difference is, however, no authority for neglecting to specify the point or contingency intended by the magistrate to trigger authorization, and the government should beware of banking on the terms of a warrant without such specification. The notation of a starting date was an established feature even of the objectionable 18th-century writs of assistance, see, *e.g.*, Massachusetts Writs of Assistance Bill, 1762, reprinted in M. Smith, The Writs of Assistance Case 567–568 (1978); Writ of Assistance (English) of George III, 1761, reprinted in *id.*, at 524–527. And it is fair to say that the very word "warrant" in the Fourth Amendment means a statement of authority that sets out the time at which (or, in the case of anticipatory warrants,

the condition on which) the authorization begins.*

An issuing magistrate's failure to mention that condition can lead to several untoward consequences with constitutional significance. To begin with, a warrant that fails to tell the truth about what a magistrate authorized cannot inform the police officer's responsibility to respect the limits of authorization, see *Groh* v. *Ramirez,* 540 U. S. 551, 560–563, 561, and n. 4 (2004), a failing assuming real significance when the warrant is not executed by the official who applied for it and happens to know the unstated condition. The peril is that if an officer simply takes such a warrant on its face and makes the ostensibly authorized search before the unstated condition has been met, the search will be held unreasonable. It is true that we have declined to apply the exclusionary rule when a police officer reasonably relies on the product of a magistrate's faulty judgment or sloppy practice, see *Massachusetts* v. *Sheppard,* 468 U. S. 981, 987–991 (1984). But when a government officer obtains what the magistrate says is an anticipatory warrant, he must know or should realize when it omits the condition on which authorization depends, and it is hard to see why the government should not be held to the condition despite the unconditional face of the warrant. Cf. *Groh* v. *Ramirez, supra*, at 554–555, 563, and n. 6 (declaring unconstitutional a search conducted pursuant to a warrant failing to specify the items the government asked the magistrate permission to seize in part because "officers leading a search team must 'make sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct'" (brackets omitted)).

Nor does an incomplete anticipatory warrant address an

_____

*Federal Rule of Criminal Procedure 41(e)(2)(A) in fact requires that an issued warrant command the executing officer to "execute the warrant within a specified time no longer than 10 days."

owner's interest in an accurate statement of the government's authority to search property. To be sure, the extent of that interest is yet to be settled; in *Groh* v. *Ramirez, supra*, the Court was careful to note that the right of an owner to demand to see a copy of the warrant before making way for the police had not been determined, *id.*, at 562, n. 5, and it remains undetermined today. But regardless of any right on the owner's part, showing an accurate warrant reliably "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States* v. *Chadwick,* 433 U. S. 1, 9 (1977), quoted in *Groh* v. *Ramirez, supra*, at 561. And if a later case holds that the homeowner has a right to inspect the warrant on request, a statement of the condition of authorization would give the owner a right to correct any misapprehension on the police's part that the condition had been met when in fact it had not been. If the police were then to enter anyway without a reasonable (albeit incorrect) justification, the search would certainly be open to serious challenge as unreasonable within the meaning of the Fourth Amendment.