**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 13-4407

———————

JOHN HART;
JILL PIZZOLA,

Appellants

v.

KATHRYN GORDON,
Individually and In Her Official Capacity as a
Detective for the City of Philadelphia Police Department

———————————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-06875)
District Judge:  Honorable Stewart Dalzell

———————————————————

Submitted under Third Circuit LAR 34.1(a)
October 30, 2014

Before:  MCKEE, *Chief Judge*, GREENAWAY, JR. and KRAUSE, *Circuit Judges*

(Filed: November 6, 2014)

———————

OPINION[*]

———————

KRAUSE, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

John Hart and Jill Pizzola (collectively "Appellants") appeal the grant of summary judgment to Philadelphia Police Detective Kathryn Gordon on their Fourth and Fifth Amendment claims, stemming from Gordon's magistrate-approved search of Hart's apartment.[1]  We affirm because Gordon was entitled to qualified immunity on the Fourth Amendment claim, and because the Fifth Amendment claim is meritless.[2]

The doctrine of qualified immunity protects government officials from private suit when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,"[3] and protects those officials who make "reasonable but mistaken judgments about open legal questions."[4]  When addressing qualified immunity, we ask "whether a defendant's conduct violated a [person's] statutory or constitutional rights" and whether "the unlawfulness of the conduct should have been apparent to an objectively reasonable official."[5]  A district court has the discretion to decide which prong to address first.[6]  Here, the District Court found that no constitutional right was violated, ending the inquiry.  Nevertheless, given the doctrine's

---

[1] We have jurisdiction to hear the appeal under 28 U.S.C § 1291.  We exercise plenary review over a district court's grant of summary judgment.  *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir. 1997).  Because we write for the parties, we recite only those facts necessary to our conclusion.

[2] Though the District Court found that no Fourth Amendment violation occurred, and thus did not reach the issue of qualified immunity, "[w]e may affirm . . . for any reason supported by the record." *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011) (citing *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005)).

[3] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *quoted in Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[4] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

[5] *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

[6] *Pearson*, 555 U.S. at 236.

important purpose of protecting innocent government officials from the burden of unwarranted lawsuits,[7] we take the reverse approach, and first examine Gordon's conduct. Such an inquiry demonstrates that immunity was warranted.

The Fourth Amendment requires that a warrant must be based upon probable cause and must "particularly describ[e] the place to be searched, and the persons or things to be seized."[8] When, as here, a Fourth Amendment suit brought against a police officer is based on a "search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officer[] acted in an objectively reasonable manner or, as [the Supreme Court has] sometimes put it, in objective good faith."[9] Once a magistrate has issued the warrant, only a "narrow exception" to qualified immunity applies,[10] when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."[11]

Gordon's conduct does not meet the high threshold for such an exception.[12] Responding to allegations of rape, kidnapping, assault, identity theft, and ongoing harassment against Hart, Gordon prepared a detailed affidavit for a search warrant of his

---

[7] *See, e.g., Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005) ("The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'") (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).

[8] U.S. Const. amend. IV.

[9] *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (citations and internal quotation marks omitted)

[10] *Id.* at 1246.

[11] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[12] *See Messerschmidt*, 132 S. Ct. at 1245.

3

residence. The search warrant itself, also approved by the Philadelphia District Attorney's Office, was broader and did not mention items that Gordon eventually seized, such as Hart's computer. [13] While the probable cause section of the warrant incorporated the affidavit, the section listing the items to be searched did not.

After the magistrate approved the warrant, Gordon executed her search with two other officers, seizing possessions that were contemplated in the affidavit. Thus, to the extent the failure to incorporate the affidavit left the warrant impermissibly overbroad, Gordon's narrower, unincorporated affidavit permissibly modified it, because the actual search that occurred was "restricted to the narrower scope of the affidavit," rather than the more generalized warrant.[14] In sum, given the government attorney's and magistrate's approval of the warrant, the search's restriction to the items in the particularized affidavit, and Gordon's consistent deposition testimony, it is clear that Gordon acted reasonably. As such, she was entitled to qualified immunity.

Even were we to reach the merits of the claim, we would affirm the District Court's finding that no constitutional right was violated. In addition to their argument that the search warrant was impermissibly overbroad, Appellants argue that Gordon's failure to give Pizzola the warrant and affidavit during the search rendered it

---

[13] *See United States v. Katzin*, No. 12-2548, 2014 WL 4851779, at *13 (3d Cir. Oct. 1, 2014) (en banc) (noting that we apply an officer's "reliance on government attorneys in our good faith calculus").

[14] *United States v. Tracey*, 597 F.3d 140, 149 (3d Cir. 2010) (citing *Doe v. Groody*, 361 F.3d 232, 240 (3d Cir. 2004)).

unconstitutional.[15] This does not change our analysis, as "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41" requires that "the executing officer . . . present the property owner with a copy of the warrant before conducting his search."[16]

Hart also argues that Gordon's subsequent search of the hard drive of his computer was unconstitutional. We disagree. We have recognized that "because criminals can— and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required."[17] While a broad search of a hard drive still may, in some cases, be overbroad,[18] Hart points to nothing in the record indicating that an overbroad search actually occurred. Accordingly, even if Gordon were not entitled to qualified immunity, no Fourth Amendment violation occurred, and the District Court correctly dismissed the claim.

Finally, Appellants' Fifth Amendment Takings Clause claim fails, as well. Hart argues that the City took some of his items and never returned them, and thus, a Fifth Amendment taking occurred. Pizzola goes a step further and alleges that because Gordon *copied* some of her papers and has not given her back those *copies*, she too has a Takings

---

[15] Pizzola was staying in the apartment at the time, and had her possessions in bags in the apartment. Some of the belongings seized were hers.

[16] *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006) (citations omitted); *see also Tracey*, 597 F.3d at 146 n.5 ("Of course, the Fourth Amendment does not require the officer to provide a copy of the warrant to the subject before he conducts the search."); *United States v. Cazares-Olivas,* 515 F.3d 726, 730 (7th Cir. 2008) (holding that "whatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching"). Only Pizzola could have been given the documents. Hart was imprisoned at the time.

[17] *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011).

[18] *See id*.

5

Clause claim.  However, no viable Takings Clause claim occurs when property has been seized pursuant to a lawful search warrant.[19]  Instead, the limits on the police power within this context come from the Due Process Clause,[20] a claim that is not raised here.

Because we conclude that Gordon is entitled to qualified immunity and that no taking occurred, we affirm the order of the District Court.

---

[19] *See, e.g., Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 336 (7th Cir. 2011) (holding that a "Takings Clause claim is a non-starter" when property is retained or damaged pursuant to the police power); *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997) (finding no viable Takings Clause claim after police allegedly ransacked home).

[20] *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008).