**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 7 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50345 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00611-SVW-2 |
| v. | |
| MELISSA MORTON, AKA Melissa Ann Morton, AKA Melissa Thomson Morton, AKA Melissa Thomson, AKA Melissa Ann Thomson, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted May 15, 2019
Pasadena, California

Before: NGUYEN and OWENS, Circuit Judges, and ANTOON,[**] District Judge.

A jury convicted Defendant-Appellant Melissa Morton and her husband[1] of

---

[*]    This disposition is not   appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

[1]    Morton and her husband were tried together, and both were convicted. Mr. Morton also appealed, but his appeal is not before us.

multiple crimes related to a complex conspiracy to defraud the United States by filing false tax returns. After Morton's conviction, the district court sentenced her to two concurrent 24-month terms of incarceration. Morton now challenges several aspects of the district court proceedings. Because the parties are familiar with the background facts of the case, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291. After thorough review of the many issues presented, we affirm.

1.      Morton first challenges the district court's order denying her motion to suppress. She contends that the warrant to search her apartment was both overbroad and insufficiently particularized. We conclude that the Fourth Amendment did not require suppression.

Government agents submitted a warrant application to a United States Magistrate Judge. The application included two attachments and an 87-page affidavit. Attachment A described Morton's apartment, the place to be searched. Attachment B—attached to the warrant at all times—described 22 categories of documents and evidence that the agents were authorized to search for and seize. The affidavit, which an Internal Revenue Service investigator signed, detailed the probable cause upon which the warrant application was based. The search warrant application package that the magistrate judge reviewed contained the affidavit, but the affidavit was not attached to the search warrant. The case agent overseeing the

2

search left the affidavit in his locked vehicle across the street from Morton's apartment while agents executed the search. Morton raises overbreadth and particularity challenges to the search warrant.[2]

*a. Overbreadth*

To avoid overbreadth, a warrant must give "legal, that is, not overbroad, instructions," *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009), meaning that "there must be probable cause to seize the particular things named in the warrant," *id.* (alterations omitted) (internal quotation marks and citations omitted). Probable cause, in turn, means that there is "a fair probability

---

[2]     In their briefs, the parties argue at length about whether the warrant "incorporated" the affidavit so as to cure any deficiencies in the warrant. But we need not reach this issue. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents," *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (citations omitted), and thus an affidavit may remedy an insufficiently particular warrant only if the warrant "incorporated" the affidavit, *see United States v. Prop. Belonging to Talk of the Town Bookstore, Inc. (In re Seizure of Property Belonging to Talk of the Town Bookstore, Inc.)*, 644 F.2d 1317, 1319 (9th Cir. 1981) (setting forth the two-pronged incorporation test). But because an overbreadth evaluation is a type of probable cause inquiry, *see United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990), *as amended on denial of reh'g* (Jan. 15, 1991) (referring to the overbreadth requirement as the "probable cause rule"), we must always evaluate the affidavit—regardless of whether the warrant at issue properly incorporated that affidavit—when determining whether a warrant was overbroad. *Cf. United States v. Grubbs*, 547 U.S. 90, 98 (2006) ("The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause . . . ."). Because we conclude that Attachment B sufficiently particularized the warrant, we need not rely on the affidavit for our particularity analysis. We therefore need not determine whether the warrant properly incorporated the affidavit to resolve this case.

3

that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007) (internal quotation marks and citations omitted). When evaluating probable cause, we must "ensure that the magistrate had a 'substantial basis' for finding probable cause." *Weber*, 923 F.2d at 1343 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, the affidavit provided probable cause for the seizure of 21 of the 22 categories of items listed in Attachment B. Specifically, government agents had probable cause to seize the items listed in categories "a" through "t" and "v" of Attachment B. These categories describe documents, records, and various instrumentalities that Morton, her husband, or their related businesses likely used to facilitate the fraudulent schemes described in the affidavit.

However, category "u," which directed agents to seize the "[c]orrespondence and notes, in both electronic (e-mail) and physical form by and between Sean Morton, Melissa Morton, Heaven & Earth LLC, any dog walking business, and any cat breeding business, and/or *any third party*" (emphasis added), authorized the seizure of items beyond the scope of the probable cause upon which the warrant was based. The magistrate judge did not have a substantial basis for finding probable cause for such a seizure. *Cf. SDI Future Health*, 568 F.3d at 705 ("[T]his category practically begs the search team to find and to seize the contact

information of every person who ever dealt with SDI. It would have been far more sensible, as well as constitutional, to limit the search to information relating to [individuals and businesses] . . . likely to turn up conspirators in the alleged fraud." (citation omitted)).

But the overbreadth of category "u" does not fell this warrant. As the Government noted at oral argument, any seized correspondence encompassed by category "u" and admitted at trial also falls within the descriptions of other categories listed in Attachment B. Because the search and seizures were limited to the proper scope of probable cause, the Fourth Amendment did not require suppression. *See United States v. Luk*, 859 F.2d 667, 677–78 (9th Cir. 1988) (applying the good-faith exception to an overbroad warrant where agents limited their search and seizures to the scope of probable cause).

### b. Particularity

Particularity, in the Fourth Amendment context, means that "the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize." *SDI Future Health*, 568 F.3d at 702 (internal quotation marks and citation omitted). This "description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Id.* (internal quotation marks and citations omitted). The level of detail required in a warrant, however, "is related to the particular

circumstances and the nature of the evidence sought." *Id.* (internal quotation marks and citation omitted). We review the particularity of a warrant *de novo*. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

Here, as described in Attachment B, government agents sought 22 categories of items. Although Attachment B listed many items, it described those items with particularity—including descriptions of the documents, date ranges within which the documents had to fall, and entities or individuals to which the documents had to relate. Attachment B, which was attached to the search warrant, thus satisfies the particularity requirement regardless of whether the affidavit was incorporated. *See SDI Future Health*, 568 F.3d at 702 ("Because the warrant was not vague as to what it directed law enforcement officers to search for and to seize, we are satisfied that it did not lack particularity for Fourth Amendment purposes.").

Based on the foregoing, we affirm the district court's order denying Morton's motion to suppress.

2. Morton next challenges the district court's denial of her motion for a mistrial. We review the district court's decision to deny a mistrial for abuse of discretion. *See United States v. Charmley*, 764 F.2d 675, 677 (9th Cir. 1985). Morton contends that inadmissible testimony by her husband—that Morton was "in banking for many years"—undercut her defense that she had a good-faith belief in the legality of the fraudulent schemes in which she and her husband were

engaged. We are not persuaded.

The district court sustained Morton's objection to her husband's testimony on relevance grounds. We need not resolve whether the testimony was admissible because even if it were not, the district court's curative action—sustaining an objection, striking the testimony, and instructing the jury that stricken testimony should not be considered—dissipated any effect the testimony may have had on the trial. *See United States v. Lemus*, 847 F.3d 1016, 1025 (9th Cir. 2016) ("When the court strikes testimony and gives . . . an instruction [to disregard it], there is a strong presumption that the jury has followed the court's instruction." (alterations in original) (internal quotation marks omitted)).

Accordingly, the district court did not abuse its discretion in denying Morton's motion for a mistrial.

3. Finally, Morton challenges several of the jury instructions given by the district court. However, Morton waived some of these challenges, and she failed to preserve others.

Preliminarily, we note that at trial Morton waived two of her challenges to the jury instructions. On appeal Morton challenges the jury instructions relating to the charges of presenting a false, fictitious, or fraudulent claim against the United States in violation of 18 U.S.C. § 287 and conspiring to defraud the United States in violation of 18 U.S.C. § 371. But Morton and the Government jointly proposed

the instructions relating to those two offenses, and Morton's challenge to these instructions is based on case law that existed well before she was indicted. We have previously found waiver in nearly identical circumstances. *See United States v. Cain*, 130 F.3d 381, 383–84 (9th Cir. 1997) (concluding that the defendant waived his right to challenge a jury instruction because defense counsel jointly proposed the instruction and the case law on which the defendant relied was published at the time of the trial). In accordance with *Cain*, we conclude that Morton waived her challenge to the jury instructions relating to the false claims and conspiracy charges—18 U.S.C. §§ 287, 371.

Morton also challenges the district court's jury instructions on the charges of passing and causing others to pass false or fictitious financial instruments in violation of 18 U.S.C. § 514(a). Because Morton did not object to these instructions at trial, we review the instructions for plain error. *See United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015). The Government charged Morton with passing the instruments herself and causing others to do so, and the jury convicted her of all charges. The district court provided a general instruction covering all charges under § 514(a), and also provided specific instructions on the individual counts of (1) passing false or fictitious financial instruments, and (2) causing others to pass false or fictitious financial instruments.

First, Morton challenges the instruction relating to the charge of passing a false or fictitious financial instrument herself. However, that instruction accurately stated the law. We thus find no error in that instruction.

Second, Morton alleges that the district court erred in instructing the jury on the charges of causing others to pass false or fictitious financial instruments. The district court included the intent element when it instructed the jury on the charge of Morton passing the false or fictitious financial instrument herself, but it did not reiterate the intent element when instructing the jury on the charges of causing others to pass false or fictitious financial instruments. Morton contends that the district court's failure to reiterate the intent element when instructing the jury on the charges of causing others to pass false or fictitious financial instruments could have allowed the jury to convict her of violating § 514(a) without finding that she had the requisite intent. We are not persuaded.

While it was perhaps not best practice, we are not convinced that the district court's failure to repeat the intent element allowed the jury to convict Morton without finding that she had the requisite intent. The district court did not completely omit the intent element of § 514(a), and it also read the jury the statutory language of § 514(a), which included the intent element, during its general instruction on all the § 514(a) charges. Even if the causing-others instruction was erroneous, any error was harmless and did not affect Morton's

9

substantial rights, as required to reverse for plain error. *See Conti*, 804 F.3d at 981 ("[A]n omission of an element from a jury instruction that is harmless, under the standard set forth in *Neder* [*v. United States*, 527 U.S. 1 (1999)], does not affect a defendant's substantial rights for purposes of plain error review."). We thus conclude that the district court did not plainly err in instructing the jury on the charges of causing others to pass false or fictious financial instruments.

**AFFIRMED.**