**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALFONSO MOYA-BRETON;
ANTONIO ZALDIVAR, a/k/a Tacha,
a/k/a Antonio A. Zaldivar, a/k/a Feliz
Mesa-Moreno, a/k/a Raul Sosa Sota,

Defendants-Appellants.

Nos. 08-4032 & 08-4169
(D.C. No. 2:06-CR-00672-TC-PMW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

Defendants Alfonso Moya-Breton and Antonio Zaldivar appeal their

convictions on drug and firearms charges. Both defendants were tried by the

same jury in the district court. Their appeals involve the same underlying facts

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and they raise one identical legal issue.  Accordingly, we have elected to resolve these appeals together in a single order and judgment.

Defendants were found guilty as charged in a grand jury superseding indictment as follows:  Count I, conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine and 500 grams or more of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1) & 846; Count II, possession of 500 grams or more of cocaine with intent to distribute, pursuant to 21 U.S.C. 841(a)(1); Count III, possession with intent to distribute five grams or more of cocaine base, pursuant to 21 U.S.C. § 841(a)(1); Count IV, possession with intent to distribute five grams or more of actual methamphetamine, pursuant to 21 U.S.C. § 841(a)(1); Count V, attempt to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, pursuant to 21 U.S.C. §§ 841(a)(1) & 846; Count VI, attempt to possess with intent to distribute 500 grams or more of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1) & 846; and Count VIII, illegal alien in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(5)(A).[1]  Mr. Moya-Breton was sentenced to 360 months' imprisonment, and Mr. Zaldivar was sentenced to 324 months' imprisonment.

---

[1]     Count VII, charging the defendants with possession of firearms in relation to a drug trafficking crime, was dismissed.  In addition, Mr. Zaldivar entered a guilty plea to the charge of aggravated re-entry of a previously removed alien, in violation of 8 U.S.C. § 1326.  He does not challenge that conviction.

BACKGROUND

In September of 2006, while driving from California to West Jordan, Utah, Carlos Guzman-Obando ("Mr. Guzman") was stopped for a traffic infraction in Nevada. During the traffic stop, the officer discovered a large quantity of methamphetamine and cocaine in the gas tank of the Volkswagen Passat Mr. Guzman was driving. Mr. Guzman agreed to cooperate with authorities by arranging a controlled delivery to the intended recipients of the drugs. Accordingly, when he arrived in West Jordan, Utah, he phoned his contact and told him the car had broken down in an Albertson's store parking lot. A few minutes later, a Chevrolet Tahoe SUV drove up and defendants Moya-Breton and Zaldivar emerged. Unbeknownst to them, the authorities had disabled the drug car and Mr. Guzman was wearing a wire. The federal agents listened through the wire to the conversation among defendants and Mr. Guzman as they tried to start the car and discussed what to do about it. When the agents determined that there was probable cause to arrest, they arrested Mr. Moya-Breton and Mr. Zaldivar.

In the meantime, federal authorities had obtained a search warrant for a residence on West Maren Place in West Jordan, Utah ("the Maren residence"). The affidavit in support of the search warrant stated that Mr. Guzman had delivered a large quantity of methamphetamine and cocaine to the Maren residence by driving the Passat to the residence three days prior to his arrest in Nevada. After he drove to the residence in the Passat, someone drove him in

another vehicle to a motel where he stayed the night. The next day, the Passat was delivered to him and he drove it back to California. In addition, federal agents had observed a Toyota Echo leave the Maren residence and drive to various locations, where it stopped briefly at each, and then drive back to the residence. The agents characterized the Echo's travel as consistent with drug deliveries.

On the evening of the controlled delivery, federal agents observed the Tahoe leave the Maren residence a few minutes after Mr. Guzman phoned his contact to say he was at the Albertson's parking lot. After defendants were arrested, the agents executed the search warrant and discovered large amounts of methamphetamine, cocaine, and cash in the residence, as well as several firearms and drug-packaging materials. Agents also impounded the Tahoe. A later inventory search of the Tahoe revealed a digital camera that contained a photo of Mr. Zaldivar lying near a handgun and cell phones and holding a large roll of cash. A "trophy photo," such as this, is a photo showing a person with money, drugs, and/or weapons taken as a souvenir or to show off. *See* R. (appeal No. 08-4032) Vol. 2 at 923.

Defendants were indicted by a grand jury. Following a three-day jury trial, they were convicted of the charges stated above. On appeal, Mr. Moya-Breton asserts that the prosecutor's closing argument constituted prosecutorial misconduct requiring a new trial. Mr. Zaldivar joins in Mr. Moya-Breton's

prosecutorial-misconduct claim, and raises the following additional claims: (1) the evidence found in the Maren residence should have been suppressed, (2) the trophy photo should have been suppressed, (3) the district court's refusal to give his proffered jury instruction was reversible error, and (4) a federal agent's false testimony to the grand jury required dismissal of the indictment.

ANALYSIS

*(1) Suppression of Evidence Found in the Residence*

Mr. Zaldivar first argues that the search warrant for the Maren residence was illegal and therefore the district court should have suppressed the evidence found there. He asserts that the warrant was an anticipatory search warrant, invalid because the affidavit in support did not set forth with sufficient particularity the event that would trigger probable cause. In addition, he contends that the following statement contained in the affidavit was materially false: "According to [the cooperating informant] GUZMAN-OBANDO, he stated to agents that *he had delivered* approximately the same amount of cocaine and methamphetamine *to* [the Maren residence] approximately one week earlier on Thursday, September 14, 2006." R. (appeal No. 08-4169) Supp. Vol. 1 at 27 (emphasis added). Mr. Zaldivar maintains that this statement misled the issuing magistrate to believe that the drugs were taken into the residence when, in fact, they were not. The district court denied Mr. Zaldivar's motion to suppress, holding that (1) the search warrant was not an anticipatory warrant; (2) the

challenged statement was not a material misstatement; (3) there was no reckless disregard for the truth in obtaining the search warrant; (4) there was probable cause to issue the warrant; and (5) even if probable cause was lacking, the evidence would not be suppressed under the good-faith exception to the warrant requirement of *United States v. Leon*, 468 U.S. 897 (1984).

> Upon review of the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous. The ultimate determination of reasonableness, however, is a question of law which we review de novo, considering the totality of the circumstances. Although we give the magistrate's probable cause determination great deference, we will not defer if the affidavit does not provide a substantial basis for concluding that probable cause existed.

*United States v. Iiland*, 254 F.3d 1264, 1268 (10th Cir. 2001) (citations and quotations omitted).

We do not address Mr. Zaldivar's claim that the affidavit in support of an anticipatory search warrant was inadequate because we agree with the district court that the warrant in this case was not an anticipatory warrant. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place. Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time–a so-called 'triggering condition.'" *United States v. Grubbs*, 547 U.S. 90, 94 (2006). (citation and quotation omitted).

In contrast, here, even though the search warrant was not executed until the defendants were arrested, neither the affidavit in support of the search warrant nor the warrant itself referred to a future time or triggering condition. Moreover, the circumstances described by the government to establish probable cause were in existence at the time the search warrant was requested and issued. Accordingly, this search warrant was "anticipatory" only in the sense that all warrants anticipate that evidence of a crime will be found in the searched premises. *See id.* at 95 ("Because the probable-cause requirement looks to whether the evidence will be found *when the search is conducted*, all warrants are, in a sense, 'anticipatory.'"). Because the warrant was not an anticipatory warrant, no future event was required to trigger probable cause, and Mr. Zaldivar's arguments regarding the lack of specificity of a future event are irrelevant.

Although Mr. Zaldivar recognizes that the district court held alternatively that the *Leon* good-faith exception applied, he contends that if the challenged statement about Mr. Guzman-Obando's prior drug delivery was recklessly false, it would remove this case from *Leon*'s purview. But Mr. Zaldivar has provided neither legal authority nor record support for this contention. To the contrary, Agent Marsee testified at a pretrial hearing that Mr. Guzman explained that four days before Mr. Zaldivar's arrest, he had driven a car which he knew contained a large quantity of illicit drugs in its gas tank to the Maren residence and left it there, while he was driven in another vehicle to a hotel. Because Mr. Zaldivar

-7-

has suggested no evidentiary basis for a finding that the challenged statement was false, let alone recklessly false, and because he does not otherwise dispute the district court's application of the *Leon* good-faith exception, we affirm the district court's order denying suppression of the evidence found in the Maren residence. *Cf. GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387-88 (10th Cir. 1997) (holding failure to address district court's alternative ground for granting summary judgment compelled affirmance).

## *(2) Suppression of Trophy Photo*

Next, Mr. Zaldivar argues that the district court erred in denying his motion to suppress the trophy photo found in the Tahoe showing himself with a handgun, cell phones, and a large roll of cash. He testified that his codefendant Moya-Breton took the photo. He said that he had asked Moya-Breton to erase the photo, and Moya-Breton said he would. Mr. Zaldivar further stated that it was his understanding that the photo would be kept secret. The district court denied suppression, holding that Mr. Zaldivar did not have standing to challenge the search of the camera.

> We review de novo both the threshold question of whether [defendant] has standing to challenge the search and the ultimate question of whether the search violated the Fourth Amendment. *United States v. Rhiger,* 315 F.3d 1283, 1285, 1287 (10th Cir. 2003). In reviewing the district court's ruling on the motion to suppress, we view the evidence in the light most favorable to the government. *Id.* at 1287. We look first at the evidence introduced at the hearing on the motion to suppress, although our review is not limited to that

evidence. *See United States v. Parra,* 2 F.3d 1058, 1065 (10th Cir. 1993).

. . . .

It is well-established that "the Fourth Amendment is a personal right that must be invoked by an individual." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998); *see United States v. Rubio-Rivera,* 917 F.2d 1271, 1274 (10th Cir. 1990). Therefore, a defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search. *Rubio-Rivera,* 917 F.2d at 1274. Standing requires the defendant to show "that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable." *Rhiger,* 315 F.3d at 1285 (quoting *United States v. Higgins,* 282 F.3d 1261, 1270 (10th Cir. 2002)).

*United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009).

Mr. Zaldivar does not claim that he had an expectation of privacy in the camera. Rather, he claims that he has standing to challenge the photo because Mr. Moya-Breton said he would erase the photo and Mr. Zaldivar understood that it would be kept secret. The area searched was Mr. Moya-Breton's camera. Mr. Zaldivar did not "clearly manifest[] a subjective expectation of privacy" in the camera. *United States v. Edwards*, 242 F.3d 928, 937 (10th Cir. 2001); *cf. id.* at 936-37 (holding defendant had standing to challenge the search of his personal luggage in car trunk because the bags were closed and they contained personal belongings). Therefore, he has failed to carry his burden to establish that he had a Fourth Amendment interest in the photo found in the camera. *See United States v. Hilton*, 619 F.2d 127, 130, 133 (1st Cir. 1980) (holding defendants had no

standing to challenge developed film because they did not assert any proprietary or possessory interest in camera or film canisters). Consequently, the district court properly denied suppression of the photo.

*(3) Proposed Jury Instruction*

Mr. Zaldivar also claims that the district court committed reversible error in refusing to give his proffered Instruction No. 13 and instead gave Instruction No. 22 regarding membership in a conspiracy. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United States v. Fria Vazquez Del Mercado*, 223 F.3d 1213, 1216 (10th Cir. 2000) (quotation omitted).

Mr. Zaldivar asserts that his proffered instruction on multiple conspiracies was supported by the evidence and was necessary to inform the jury about the applicable law. The proffered instruction stated in part, "Some of the defendants have argued that there were really two or more separate conspiracies, instead of the single conspiracy charged in the indictment," and explained that proof of a separate conspiracy was insufficient to convict on the conspiracy charged. R. (appeal No. 08-4169) Vol. 1, Doc. 149 at 25. Mr. Zaldivar has cited to no evidence, and our review of the record has revealed none, that Mr. Zaldivar was a member of a different conspiracy. Instead, he argues on appeal, as he did at trial, that he was not a member of the conspiracy charged in the superseding

indictment. He relies on evidence indicating that he was not at the Maren residence at the time of the first drug delivery; at his arrest, he had only $300 and no key to the residence on his person; no documents were produced to link him to the residence; there was no evidence of any telephone calls between him and other conspirators; there were no fingerprints to link him to any of the evidence; and one interpretation of his accompanying Mr. Moya-Breton to the controlled drug delivery was that he could not be left alone in the residence with thousands of dollars in cash and drugs.

Instruction No. 22 informed the jury that to convict either defendant, they must find, among other things, that he "knowingly and voluntarily involved himself in [the charged] conspiracy," that proof of the conspiracy required a showing "beyond a reasonable doubt that the members . . . came to a mutual understanding to try to accomplish a common and unlawful plan," that the jury must "determine whether the particular defendant was a member of [the] conspiracy," and that "the government must prove beyond a reasonable doubt that [defendant] was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy." R. (appeal No. 08-4032) Vol. 2 at 157, 160. Moreover, the instruction stated that "[m]ere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy."

-11-

*Id.* at 157. Having carefully reviewed Instruction No. 22, together with all of the jury instructions given by the district court, we conclude that the instructions accurately informed the jury of the governing law.

*(4) False Testimony to Grand Jury*

Mr. Zaldivar next asserts error in the district court's refusal to dismiss the grand jury's superceding indictment based on false testimony by a federal law-enforcement officer. He maintains that dismissal was required based on Agent Marsee's testimony that he found a photo of Mr. Zaldivar showing him "laying [sic] at the foot of the stairs holding a bag of money and a bunch of dope in his hand." R. (appeal No. 08-4169) Supp. Vol. 2 at 29. The district court agreed that the agent's statement about Mr. Zaldivar holding drugs was incorrect and misleading, but explicitly did not find that the prosecuting attorney knew the statement was incorrect or knowingly adduced false evidence.

When a defendant raises errors in a grand jury proceeding, "we must determine whether the claimed errors should be characterized as 'technical' or 'procedural' errors affecting only the grand jury's finding of probable cause, or whether the alleged errors are more properly characterized as threatening the defendant's right to fundamental fairness in the criminal process." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244 (10th Cir. 1996) (quotation omitted). To show that his right to fundamental fairness was threatened, a defendant must demonstrate that the alleged errors "substantially influenced the grand jury's

decision to indict, or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quotation omitted). Examples of "[c]onduct that might properly be characterized as transgressing a defendant's right to fundamental fairness would include . . . an attempt by the government to unfairly sway the grand jury, or a pervasive attempt to charge without cause or to undermine the defense." *Lopez-Gutierrez*, 83 F.3d at 1245 (quotation and alteration omitted).

The error that Mr. Zaldivar asserts requires dismissal of the superseding indictment can be characterized as technical or procedural, rather than threatening fundamental fairness, because it could have affected only the grand jury's finding of probable cause. The petit jury's subsequent guilty verdict established not only probable cause of guilt, but guilt beyond a reasonable doubt. *See United States v. Wiseman*, 172 F.3d 1196, 1205-06 (10th Cir. 1999). Accordingly, "'any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.'" *Id.* at 1206 (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)). We find no error in the district court's denial of Mr. Zaldivar's motion to dismiss the superseding indictment.

*(5) Improper Closing Argument*

Finally, both Mr. Moya-Breton and Mr. Zaldivar contend that the prosecutor's closing argument requires reversal of their convictions. Because no

-13-

contemporaneous objection was made, we review this argument for plain error. *United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1100.

Defendants allege prosecutorial misconduct in the following remark made by the prosecutor near the end of his lengthy closing argument: "You can take these two drug dealers off of our streets, remove them from what they've been doing for who knows how long and help keep these kinds of poisons away from their intended recipients." R. (appeal No. 08-4032) Vol. 2 at 1034. In addition, defendants claim misconduct in the prosecutor's rebuttal closing argument wherein he "likened the jury to the dogs in a fox hunt, charged with the duty to not let the fox get away." Aplt. Moya-Breton's Br. at 8 (quotation omitted).

Even if the first comment could be construed as improper, "the jury was properly instructed that [statements and] arguments [of counsel] are not evidence and that Defendant[s] should only be convicted on the basis of evidence submitted at trial. We presume the jury follows its instructions." *United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir. 2009), *petition for cert. filed* (U.S. May 4, 2009) (No. 08-10223); *see* R. (appeal No. 08-4032) Vol. 2 at 142. In addition, the comment was isolated. *See Rogers*, 556 F.3d at 1141. "[W]hen taken in context of the entire trial and the lengthy closing arguments, the objectionable [remark]

-14-

did not significantly detract from the proper focus of the argument." *Id.* (quotation omitted). Therefore, we conclude that defendants failed to establish that the prosecutor's statement affected their "substantial rights." *See id.*

We turn to the other comment defendants claim requires a new trial. In discussing fox hunting, the prosecutor explained that the term "red herring" originated from hunters dragging a fish across the fox's trail to confuse the dogs and extend the hunt. R. (appeal No. 08-4032) Vol. 2 at 1092-23. The prosecutor then urged the jury not to be distracted by the defendants' respective closing arguments, but to focus on the evidence. "Prosecutors have considerable latitude to respond to an argument made by opposing counsel." *United States v. Franklin-El*, 555 F.3d 1115, 1126 (10th Cir. 2009) (quotation omitted). In context, we determine that the prosecutor's remarks were not improper.

## CONCLUSION

The judgments of the district court are AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge


-15-