**Electronically Filed
Supreme Court
SCWC-12-0000133
15-MAY-2017
08:21 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

JASON CURTIS and MELISSA HALL,
Petitioners/Defendants-Appellants,
and
GENEVIEVE WALKER, Respondent/Defendant-Appellee.

SCWC-12-0000133

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000133 and CAAP-12-0000134; CR. NO. 11-1-0016)

MAY 15, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to determine what information must appear on the face of an "anticipatory" search warrant, i.e., a warrant that cannot be executed until some expected

future event occurs.  This case arose when a FedEx employee discovered marijuana in a package addressed to a residence on Kaua'i.  The Kaua'i Police Department (KPD) was contacted and decided to conduct a controlled delivery of the package to the address listed.  They applied for a warrant to allow them to search the premises upon completion of the delivery.  However, rather than listing this triggering condition, the warrant issued by the district court instead authorized the KPD to conduct the search "forthwith."

The KPD completed the controlled delivery, and Petitioners Jason Curtis and Melissa Hall were charged with drug offenses based on evidence seized in the subsequent search.  Petitioners moved to suppress that evidence, arguing that the anticipatory search warrant was invalid because it failed to list the triggering condition.  The circuit court denied Petitioners' motion, and the Intermediate Court of Appeal (ICA) affirmed.

We are faced with a question of first impression for this court:  Does the Hawai'i Constitution require that an anticipatory search warrant identify the triggering condition on the face of the warrant?  In light of the privacy protections contained in article I, section 7 of the Hawai'i Constitution, we hold that an anticipatory search warrant must, on its face, identify the triggering condition to be valid.  We therefore

2

vacate the ICA's February 23, 2016 Judgment on Appeal and the circuit court's denial of Petitioners' motion to suppress evidence seized pursuant to the unlawful search warrant, and remand the case to the circuit court for proceedings consistent with this Opinion.

## I. Background

### A. Anticipatory Search Warrant

On December 1, 2010, a FedEx employee at the Honolulu FedEx sorting facility opened a parcel that he suspected contained illegal narcotics. The parcel was addressed to "Jennifer ROBERTSON" at a Kaua'i residential address (Subject Premises). After discovering plastic bags in the parcel that appeared to contain marijuana, the FedEx employee notified a Drug Enforcement Administration (DEA) officer. The parcel and its contents were subsequently turned over to the KPD. After testing and weighing the suspected marijuana, the KPD determined that the parcel contained approximately eight pounds of marijuana.

KPD Officer Paris Resinto applied for and obtained a court order authorizing KPD officers to install in the parcel a tracking device that would permit the KPD to track the location of the parcel and determine when the parcel was opened. In conjunction with obtaining the order for the tracking device, Officer Resinto applied for an anticipatory search warrant to

3

search the Subject Premises for the parcel and its contents, including the tracking device.

Officer Resinto's affidavit in support of the anticipatory search warrant explained that (1) the KPD planned to effect a controlled delivery of the parcel under police surveillance to the Subject Premises to "identify the person(s) involved in this illegal drug shipment"; (2) the KPD would install the tracking device in the parcel; and (3) after the tracking device was installed, Officer Resinto and KPD Sergeant Darren Rose would maintain custody of the parcel until it was delivered to the Subject Premises. The affidavit also incorporated three documents by reference: a description of Officer Resinto's training and experience, the affidavit supporting the application for the tracking device, and the order granting the application.

The affidavit stated that Officer Resinto "has reasonable grounds to believe that the property described herein will be located in the [Subject Premises] after the time of delivery of the suspect parcel and request that a search warrant issue commanding that a search be made of said residence for said property[.]" The affidavit also requested the issuance of a search warrant to search the Subject Premises "within forty-eight (48) hours after the time of delivery of the subject parcel[.]"

On December 2, 2010, the district court[1] issued an "Anticipatory Search Warrant" based on Officer Resinto's affidavit, authorizing KPD officers to search the Subject Premises for the parcel and its contents.  The search warrant did not set forth the triggering condition for the execution of warrant, and it did not mention the controlled delivery of the parcel described in Officer Resinto's affidavit.  Rather, the search warrant stated:

> Affidavit(s) having been made before me that the property described herein may be found at the location set forth herein and that it falls within the grounds specified by said affidavit(s).  And I am satisfied that there is probable cause to believe that the property described herein is located within the property to be searched and that the foregoing grounds for application for issuance of a search warrant exist:
>
> YOU ARE HEREBY COMMANDED forthwith to search:
>
> [The Subject Premises]

(Emphases added.)

It also described the property to be searched and stated that "[t]he search shall take place within 10 days of this date."

That same day, the KPD conducted a controlled delivery of the parcel to the Subject Premises.  Sergeant Rose approached the Subject Premises and handed the parcel to Curtis, who carried it inside the Subject Premises.  Sergeant Rose also saw Hall and

---

[1]     The Honorable Trudy K. Senda presided.

co-defendant Genevieve Walker. Officer Rose asked Walker if she was "Jennifer Robertson," the named addressee of the parcel. Walker said yes and signed the FedEx delivery form. Sergeant Rose left the Subject Premises and notified other KPD officers participating in the investigation that the parcel had been delivered.

About five minutes after the parcel had been delivered, the tracking device alerted the KPD officers that the parcel had been opened. In response, the KPD officers went to the Subject Premises and executed the search warrant.

In executing the warrant, the officers observed Curtis, Hall, and Walker and found the contents of the opened parcel, including the marijuana, in various parts of the Subject Premises. The officers recovered one of the bags of marijuana from the parcel. The officers also recovered drug paraphernalia and over $1,000 in cash.

## B.    Circuit Court Proceedings

On January 19, 2011, Curtis, Hall, and Walker were charged with:  (1) second-degree commercial promotion of marijuana in violation of Hawai'i Revised Statutes (HRS) § 712-1249.5(1)(a) and/or (b),[2] (2) unlawful use of drug paraphernalia

---

[2]    HRS § 712-1249.5(1) (1989) provides in relevant part:

(continued...)

in violation of HRS § 329-43.5(a),[3] and (3) second-degree
promotion of a detrimental drug in violation of HRS § 712-
1248(1)(c).[4]

On February 17, 2011, Walker filed a "Motion to Quash
Search Warrant and Suppress Illegally Obtained Evidence and
Statements" (Suppression Motion), challenging the validity of the
warrant. Walker argued that the search warrant was invalid under

---

[2](...continued)
    (1)  A person commits the offense of commercial
promotion of marijuana in the second degree if the
person knowingly:
      (a)  Possesses marijuana having an aggregate
weight of two pounds or more;
      (b)  Distributes marijuana having an aggregate
weight of one pound or more[.]

[3]    HRS § 329-43.5(a) (1988) provides:

    (a)  It is unlawful for any person to use, or to
possess with intent to use, drug paraphernalia to
plant, propagate, cultivate, grow, harvest,
manufacture, compound, convert, produce, process,
prepare, test, analyze, pack, repack, store, contain,
conceal, inject, ingest, inhale, or otherwise
introduce into the human body a controlled substance
in violation of this chapter. Any person who violates
this section is guilty of a class C felony and upon
conviction may be imprisoned pursuant to section
706-660 and, if appropriate as provided in section
706-641, fined pursuant to section 706-640.

[4]    HRS § 712-1248(1) (1989) provides in relevant part:

(1) A person commits the offense of promoting a
detrimental drug in the second degree if the person
knowingly:
. . . .
(c) Possesses one or more preparations, compounds,
mixtures, or substances, of an aggregate weight of one
ounce or more, containing any marijuana[.]

article I, section 7 of the Hawai'i Constitution[5] and under HRS §
803-31[6] because it did not contain a description of the
triggering condition on its face.

In support of her argument, Walker cited a depublished
ICA case, State v. Scott (Scott I), that set forth six
requirements for an anticipatory search warrant, including that
the warrant "authorizes a search only upon the occurrence of the
event generating the probable cause"; "authorizes a search only
within the probable life of the probable cause"; and is "executed
before the probable cause in fact expires."  87 Hawai'i 80, 80-
81, 951 P.2d 1243, 1243-44 (1998).[7]  Walker argued that the

---

[5]     Article I, section 7 of the Hawai'i Constitution provides:

Searches, Seizures, and Invasion of Privacy.
The right of the people to be secure in their persons,
houses, papers and effects against unreasonable
searches, seizures and invasions of privacy shall not
be violated; and no warrants shall issue but upon
probable cause, supported by oath or affirmation, and
particularly describing the place to be searched and
the persons or things to be seized or the
communications sought to be intercepted.

[6]     HRS § 803-31 (1998) provides:

A search warrant is an order in writing made by a
judge or other magistrate, directed to an officer of
justice, commanding the officer to search for certain
articles supposed to be in the possession of or which
are anticipated to be in the possession of one who is
charged with having obtained them illegally, or who
keeps them illegally, or with the intent of using them
as the means of committing a certain offense.

[7]     As a depublished case, Scott I has no precedential value and
cannot be cited.  The citations refer to the related Hawai'i Supreme Court
case (Scott II) that depublished Scott I.

warrant in this case did not meet these three requirements and was therefore invalid. Curtis and Hall joined in Walker's Suppression Motion.

The State opposed the motion, arguing that the warrant met the requirements set forth by the United States Supreme Court in United States v. Grubbs, 547 U.S. 90 (2006). The State also argued that the motion advocated a "hyper-technical warrant reading," even though "it is well-settled that a search warrant and its support[] should be evaluated in totality, and examined with common sense," citing State v. Sherlock, 70 Hawai'i 271, 274, 768 P.2d 1290, 1293 (1989). The circuit court denied the motion based on Grubbs, but also noted that the anticipatory search warrant was "a very, very sloppy and apparently hastily put together warrant."

On October 10, 2011, the circuit court issued "Findings of Fact, Conclusions of Law, and Order Denying [the Suppression Motion]." The circuit court made the following relevant Conclusions of Law:

> . . . .
>
> 3. The State of Hawai'i has the authority to provide constitutional protections to citizens above and beyond that provided by the U.S. Constitution and the U.S. Supreme Court, and has done so when the Hawai'i Supreme Court has deemed necessary. State v. Kaluna, 55 Haw. 361, 367-69, 520 P.2d 51, 57-58 (1974).
>
> 4. The Hawai'i Supreme Court has, however, not expanded on the constitutional protections provided by the U.S. Constitution and U.S. Supreme Court with

9

respect to anticipatory search warrants.

5.  In accordance with controlling case law, anticipatory search warrants need not contain future tense anticipatory or triggering language where the accompanying supporting affidavit adequately demonstrates the anticipatory nature and intent of the warrant itself.  U.S. v. Grubbs, 547 U.S. 90, 126 S.Ct. 1494 (2006).

.  .  .  .

7.  This Court is bound to "pay great deference" to the probable cause determination made by the issuing judge, and is to employ "a common sense and realistic, and not a hypertechnical reading of affidavits in connection with the determination of probable cause." State v. Navas, 81 Hawai‘i 29, 35 (Hawai‘i App., 1995).

.  .  .  .

9.  Read in totality, the Anticipatory Search Warrant at issue is in accordance with HRS Section 803-31 (as amended effective April 29, 1998), and is not constitutionally invalidated by present tense language that appears on page one of the warrant.  HRS Section 803-31[;] U.S. v. Grubbs, 547 U.S. 90, 126 S.Ct. 1494 (2006).

On February 6, 2012, Curtis and Hall entered conditional no contest pleas to the amended charge of first-degree promoting a detrimental drug, reserving the right to appeal the circuit court's order denying the Suppression Motion and its subsequent order denying a motion to reconsider.  On February 8, 2012, Curtis and Hall were each sentenced to pay a $5,000 fine and a $105 crime victim compensation fee.[8]

C.  **ICA Proceedings**

Curtis and Hall appealed to the ICA, arguing that the

_____

[8]  Pursuant to a plea agreement, the charges against Walker were dismissed without prejudice.  Walker was not a party to the ICA appeal.

10

circuit court erred in denying their motion to suppress.

The ICA held that the anticipatory search warrant was valid.  State v. Curtis, 137 Hawaiʻi 43, 52, 364 P.3d 941, 950 (2015).  First, the ICA determined that Hawaiʻi law is similar enough to federal law to warrant applying Grubbs.  The ICA noted that both the Hawaiʻi Constitution and U.S. Constitution "only require that the warrant particularly describe the place to be searched and the persons or things to be seized; they do not require that search warrants additionally 'include a specification of the precise manner in which they are to be executed.'"  Id. at 49, 364 P.3d at 947.  Additionally, the ICA asserted that both Federal Rules of Criminal Procedure (FRCP) Rule 41 and Hawaiʻi Rules of Penal Procedure (HRPP) Rule 41 "do not require that a copy of the search warrant be presented to the property owner or others before the warrant is executed."  Id. at 50, 364 P.3d at 948.  Given these similarities, the ICA concluded that Grubbs applied, and accordingly, anticipatory search warrants do not require triggering conditions to be valid.

The ICA then declined to follow its conclusion in Scott I "that an anticipatory search warrant must itself state the triggering condition to be valid."  Id. at 51, 364 P.3d at 949. The ICA based its reasoning on Scott I's lack of precedential value, and the fact that Grubbs was issued after Scott I had been

overruled by Scott II.  Further, the ICA noted that the

subsequent amendments to HRS § 803-31 "did not impose any

specific conditions for a valid anticipatory search warrant."

Id. at 51, 364 P.3d at 949.

Second, the ICA adopted the following test that had

been employed by other jurisdictions:

> Although the triggering condition need not be stated
> in the warrant itself . . . the following two
> conditions must be satisfied for an anticipatory
> search warrant that does not state the triggering
> condition to be valid:  (1) the officer's affidavit
> must specifically identify the triggering condition
> for the execution of the warrant; and (2) this
> triggering condition must be satisfied before the
> warrant is executed.

Id. at 50, 364 P.3d at 948.

The ICA argued that if these conditions are met, "any

risk that an anticipatory search warrant would be executed

prematurely if the warrant fails to identify the triggering

condition is exceedingly low."  Id. at 49, 364 P.3d at 947.

The ICA then concluded that these conditions were

satisfied in this case.  As to the first condition, the ICA found

that the "affidavit in support of the search warrant specifically

identified the triggering condition for the execution of the

warrant--the delivery of the parcel to the Subject Premises."

Id.  As to the second condition, the ICA found that "KPD waited

until the parcel had been delivered to the Subject Premises (and

the tracking device indicated the parcel had been opened) before

12

executing the warrant." Id. at 50, 364 P.3d at 949. The ICA further contended that there was "no plausible risk" of premature execution because law enforcement "would not be disposed to undermine the success of their efforts by premature execution of the warrant." Id. (quoting Alvidres v. Superior Court, 90 Cal. Rptr. 682, 686 (Cal. App. 1970)).

The ICA thus concluded that the anticipatory search warrant was valid, and stated that its holding was in line with the purposes underlying Hawaii's exclusionary rule and the primary purpose of the Hawaiʻi Constitution, "to safeguard the privacy and security of individuals against arbitrary invasions by government officials." Id. at 51-52, 364 P.3d at 949-50. Accordingly, the ICA affirmed the circuit court's denial of the Suppression Motion.

Petitioners timely sought certiorari review, presenting the following three questions:

> A. Does article I, section 7 of the Hawaiʻi Constitution afford greater protections for anticipatory search warrants than the 4th Amendment of the U.S. Constitution?
>
> B. Did the ICA gravely err in holding the right to privacy in the Hawaiʻi Constitution does not require the triggering event to be included in an anticipatory search warrant?
>
> C. Did the ICA gravely err in giving effect to a search warrant that was based on an objectively false finding by the issuing court that the alleged contraband was, at the time of the issuance, located on the subject premises?

13

## II. Standard of Review

**A.    Constitutional Law**

This court reviews questions of constitutional law de novo under the "right/wrong" standard and thus exercises its "own independent judgment based on the facts of the case." State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (internal quotation marks and citation omitted).

### III. Discussion

This case presents a question of first impression in this court:  Does the Hawai'i Constitution require that an anticipatory search warrant identify the triggering condition? We hold that it does.

**A.    Background on Anticipatory Search Warrants**

**1.    The Scott Decisions**

An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." Grubbs, 547 U.S. at 94.  Anticipatory warrants generally seek authority to search after the occurrence of a future event, referred to as the "triggering condition," which is often the delivery of a package containing contraband to the premises to be searched.  See id.  "By definition, it is issued before the necessary events have occurred which will allow a

14

constitutional search of the premises; if those events do not transpire, the warrant is void." Scott II, 87 Hawai'i at 80 n.1, 951 P.2d at 1243 n.1 (citation and internal quotation marks omitted).

In Scott, an undercover police officer delivered a parcel known to contain drugs to the defendant, and shortly after the delivery, the defendant was arrested pursuant to an anticipatory search warrant. Scott II, 87 Hawai'i at 81, 951 P.2d at 1244. The triggering condition was not stated on the face of the warrant. Id. at 83, 951 P.2d at 1246. The defendant moved to quash the search warrant and suppress the evidence, and the circuit court granted the motion. Id. at 82, 951 P.2d at 1245.

On appeal, the ICA concluded that an anticipatory search warrant was constitutionally permissible if the warrant:

> (1) is issued by an authorized judge based on probable cause supported by oath or affirmation; (2) is based on a clear showing, supported by oath or affirmation, of law enforcement's need to have the [anticipatory search warrant] issued before the occurrence of the event that will generate the probable cause; (3) particularly describes the place to be searched and the things to be seized; (4) authorizes a search only upon the occurrence of the event generating the probable cause; (5) authorizes a search only within the probable life of the probable cause; and (6) is executed before the probable cause in fact expires.

Id. at 83, 951 P.2d at 1246.

The ICA invalidated the warrant because it failed to satisfy requirements (1), (4), and (5). Id. It determined that

15

the warrant failed requirement (4) because "[n]otwithstanding [the officer's] averments in the affidavit that the search would not be conducted until after delivery of the Federal Express parcel, the Warrant failed to condition its execution upon actual delivery of the parcel."  Id.

In Scott II, this court, without addressing the constitutionality of anticipatory search warrants, held that such warrants were not permitted under the then-existing HRS § 803-31 (1993)[9] and HRPP Rule 41(a) (1995)[10].  Id. at 81, 951 P.2d at 1244.  This court reasoned that HRS § 803-31 authorized searches of articles "supposed to be in the possession of the person whose premises are to be searched."  Id. at 84, 951 P.2d at 1247 (emphasis in original).  We further reasoned that HRPP Rule 41 only authorized a judge to issue a search warrant "within the

---

[9]    HRS § 803-31 (1993) provided:

> Search warrant; defined.  A search warrant is an order in writing made by a judge or other magistrate, directed to an officer of justice, commanding the officer to search for certain articles supposed to be in the possession of one who is charged with having obtained them illegally, or who keeps them illegally, or with the intent of using them as the means of committing a certain offense.

[10]   HRPP Rule 41(a) (1995) provided:

> Authority to Issue Warrant.  A search warrant authorized by this rule may be issued by any district or circuit judge within the circuit wherein the property sought is located.  Application therefor should be made to a district judge wherever practicable.

16

circuit wherein the property sought is located." Id. (quoting HRPP Rule 41(a)) (emphasis in original). This court thus ordered Scott I depublished without addressing the ICA's six factors. Id. at 85, 951 P.2d at 1248.

In response to Scott II, the legislature amended HRS § 803-31 to authorize the issuance of anticipatory search warrants. 1998 Haw. Sess. Laws Act 65, § 1 at 145. The amendment added the following phrase:

> A search warrant is an order in writing made by a judge or other magistrate, directed to an officer of justice, commanding the officer to search for certain articles supposed to be in the possession of or which are anticipated to be in the possession of one who is charged with having obtained them illegally, or who keeps them illegally, or with the intent of using them as the means of committing a certain offense.

Id. (emphasis added).[11]

## 2. **United States v. Grubbs**

Eight years after this court's decision in Scott II, the United States Supreme Court considered the permissibility of anticipatory search warrants in Grubbs. In Grubbs, the defendant purchased a videotape containing child pornography from a website

---

[11]    HRPP Rule 41(a) was amended in 1999 to state:

(a)  Authority to issue warrant. Except as otherwise provided by statute, a search warrant may be issued by any district or circuit judge (1) within the circuit wherein the property sought is located; or (2) within the circuit where the property is anticipated to be located. Application therefor should be made to a district judge wherever practicable.

(Emphasis added.)

17

operated by an undercover postal inspector.  547 U.S. at 92.  The Postal Service arranged a delivery to Grubbs, and the police obtained an anticipatory search warrant that did not specify the triggering condition.  Id.  Around thirty minutes into the search, Grubbs was given a copy of the warrant, which did not include the supporting affidavit that explained when the warrant would be executed.  Id. at 93.  The search of Grubbs' residence led to the seizure of a number of items, including the videotape.  Id.  Grubbs moved to suppress the evidence, arguing that the warrant was invalid because it failed to name the triggering event.  Id.  The District Court denied the motion.  Id.

On appeal, the Ninth Circuit reversed, holding that "the particularity requirement of the Fourth Amendment[12] applies with full force to the condition precedent to an anticipatory search warrant."  United States v. Grubbs, 377 F.3d 1072, 1077 (9th Cir.) amended on denial of reh'g, 389 F.3d 1306 (9th Cir. 2004), rev'd, 547 U.S. 90 (2006).  "The rationale for this rule is simple:  'a warrant conditioned on a future event presents a

---

[12]    The Fourth Amendment to the U.S. Constitution provides:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

potential for abuse above and beyond that which exists in more traditional settings:  inevitably, the executing agents are called upon to determine when and where the triggering event specified in the warrant has actually occurred.'"  Id. at 1078 (quoting Hotal, 143 F.3d at 1226).  It therefore concluded:

> Anticipatory search warrants are invalid absent "clear, explicit, and narrow" triggering conditions. See Hotal, 143 F.3d at 1226.  Those triggering conditions may be listed either in the warrant itself or in attached documents, but whatever document contains them must be presented to the person whose property is being searched.  Absent such presentation, individuals would "stand [no] real chance of policing the officers' conduct," because they would have no opportunity to check whether the triggering events by which the impartial magistrate has limited the officers' discretion have actually occurred.

Grubbs, 377 F.3d at 1079.

In short, the failure to include the triggering conditions in the warrant or attach the affidavit to the warrant was a fatal error that required that all evidence obtained during that search be suppressed.  Id. at 1079.  Because the postal inspectors "failed to present the affidavit--the only document in which the triggering conditions were listed--to Grubbs or [his wife]," the warrant was "inoperative, and the search was illegal."  Id.

The Supreme Court reversed the Ninth Circuit's judgment, holding that anticipatory search warrants are not per se unconstitutional and that they do not require triggering conditions to be included in the warrant itself.  547 U.S. at 94,

19

97.

First, the Court held that anticipatory search warrants are not categorically unconstitutional under the Fourth Amendment, noting that "every Court of Appeals to confront the issue" has held the same. Id. at 95. The Court explained that ordinary warrants are "in a sense, 'anticipatory'" because "the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed." Id. With anticipatory warrants, "the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed." Id. at 96.

The Court reasoned that anticipatory warrants are therefore "no different in principle from ordinary warrants" because they both require a magistrate judge "to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." Id. (emphases in original).

The Court then held that the Fourth Amendment "does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself." Id. at 99. In response to the Ninth Circuit's conclusion regarding the Fourth

20

Amendment particularity requirement, the Court responded that the Fourth Amendment "specifies only two matters that must be 'particularly describe[ed]' in the warrant:  'the place to be searched' and 'the persons or things to be seized.'"  Id. at 97-98.

The Court also rejected Grubbs' two policy arguments. First, Grubbs argued that it is necessary to include the triggering condition in the warrant "to delineate the limits of the executing officer's power" because "if there is a precondition to the valid exercise of executive power, that precondition must be particularly identified on the face of the warrant."  Id. at 98 (brackets omitted).  The Court responded that "[t]he Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'"  Id.  Similarly, the court stated that the Fourth Amendment does not require the warrant to describe a triggering condition.  Id.

Second, Grubbs argued that the triggering condition needed to be in the warrant to "assur[e] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."  Id.  The Court responded that neither the

21

Fourth Amendment nor FRCP Rule 41 requires the executing officer to present a copy of the warrant to the property owner before conducting the search. Id. at 99. The Court held that the Constitution does not give property owners "license to engage the police in debate over the basis for the warrant," but protects them by requiring that an impartial judicial officer issue the warrant and by providing "a right to suppress evidence improperly obtained and a cause of action for damages." Id.

Hence, because the Fourth Amendment does not require the triggering condition to be set forth in the warrant itself, the Court held that the Ninth Circuit erred in invalidating the warrant at issue. Id.

Justice Souter, joined by Justices Stevens and Ginsburg, concurred in part and concurred in the judgment. Id. Justice Souter agreed that anticipatory search warrants are constitutional and that the Ninth Circuit erred in invalidating the warrant, but wrote separately to "qualify some points" made by the Majority. Id. at 99-100. He agreed with the Majority's argument regarding the particularity requirement, but noted that a warrant that does not specify a triggering condition can lead to "several untoward consequences with constitutional significance." Id. at 100. First, "a warrant that fails to tell the truth about what a magistrate authorized cannot inform the

22

police officer's responsibility to respect the limits of authorization," a danger with real significance if the warrant is not executed by the same official who applied for it.  Id.

Second, Justice Souter stated that an incomplete anticipatory warrant does not address an owner's interest in "an accurate statement of the government's authority to search property."  Id. at 101.  He noted that the right to inspect a warrant prior to a search has not yet been determined.  Id. However, "if a later case holds that the homeowner has a right to inspect the warrant on request, a statement of the condition of authorization would give the owner a right to correct any misapprehension on the police's part that the condition had been met when in fact it had not been."  Id.

## B.   Anticipatory Search Warrants Are Not Categorically Unconstitutional

As discussed above, Grubbs held that anticipatory search warrants are constitutional under the Fourth Amendment, noting that "every Court of Appeals to confront the issue" has held the same.  547 U.S. at 95.  Further, the Hawaiʻi legislature's response to Scott II was to amend HRS § 803-31 to give judges the authority to issue anticipatory search warrants. Shortly thereafter, this court amended HRPP Rule 41 to permit anticipatory search warrants.

23

However, this court has never explicitly ruled on whether anticipatory search warrants are permitted under article I, section 7 of the Hawai'i Constitution.  See Scott II, 87 Hawai'i at 81, 951 P.2d at 1243 (disposing of the case "[w]ithout addressing the constitutionality of an [anticipatory search warrant]").  Thus, we address this threshold question before considering whether the Hawai'i Constitution requires triggering conditions to be on the face of an anticipatory search warrant.

We hold that anticipatory search warrants are valid under the Hawai'i Constitution when supported by probable cause because they are consistent with the requirements of article I, section 7, and they incentivize police officers to obtain warrants prior to conducting searches.

First, article I, section 7 does not contain any language specifying the time at which a warrant should issue.  It states:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

The Hawai'i Constitution thus requires that warrants be based on probable cause and particularly describe the place to be searched and property to be seized.  See State v. Woolsey, 71

24

Haw. 638, 640, 802 P.2d 478, 479 (1990).  Anticipatory warrants satisfy these conditions--even if probable cause will not arise until some future event.

Second, the probable cause analysis is conceptually "no different in principle" for anticipatory search warrants because they still require a neutral judge to determine "(1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed."  Grubbs, 547 U.S. at 96 (emphases in original). With either ordinary warrants or anticipatory search warrants, the judge must review the sworn affidavits to determine whether, at the time of the search, the items to be seized will be "in the possession of one who is charged with having obtained them illegally, or who keeps them illegally, or with the intent of using them as the means of committing a certain offense."  HRS § 803-31.  Thus, "when a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant."  United States v. Garcia, 882 F.2d 699, 702 (2d Cir. 1989).  Also, anticipatory search warrants may make it more likely that the items to be seized will be at the specified location at the time of the search because they are based on the

25

future occurrence of identified events, not "solely upon the known prior location of the items to be seized." Commonweath v. Soares, 424 N.E.2d 221, 224 (Mass. 1981).

Third and finally, anticipatory search warrants incentivize police officers to obtain approval from a neutral judge prior to searching private premises. Given "the speed with which government agents are required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics," police often have to decide whether to "proceed without a warrant or risk losing both criminal and contraband." Garcia, 882 F.2d at 703.

The purposes of article 1, section 7 of the Hawaiʻi Constitution are better served by incentivizing officers to obtain warrants in advance "because a neutral judge, rather than a police officer acting in the heat of the moment, makes the critical determination of whether probable cause for a search exists." People v. Carlson, 708 N.E.2d 372, 375-76 (Ill. 1999). By requiring neutral judges to determine whether known facts legally justify a search prior to the search taking place, anticipatory search warrants decrease the chance that a citizen will be subject to an unreasonable search, seizure, or invasion of privacy.

Thus, we hold that anticipatory search warrants do not

26

violate the Hawaiʻi Constitution because they are consistent with the requirements and purposes of article 1, section 7.[13]

## C.    Triggering Conditions Must Be Identified in the Anticipatory Search Warrant

Grubbs held that the Fourth Amendment "does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself."  547 U.S. at 99.  However, Grubbs does not dispose of this case.  As correctly noted by Petitioners, "'[A]rticle I, section 7 of the Hawaiʻi Constitution' provides a 'more extensive right of privacy . . . than that of the United States Constitution.'"  Accordingly, we may provide broader protections if required by the relevant constitutional provisions and our case law interpreting those provisions.  State v. Lopez, 78 Hawaiʻi 433, 445, 896 P.2d 889, 901 (1995) ("[I]t is well-established that as long as we afford defendants the minimum protection required by the federal constitution, we are free to provide broader protection under our state constitution.").

---

[13]    This holding is consistent with the vast majority of state courts who have addressed this issued.  See Norma Rotunno, Validity of anticipatory search warrants—state cases, 67 A.L.R.5th 361 Art. II, § 3 (originally published in 1999, updated weekly) (collecting cases).  These include states that have privacy rights in their state constitutions, similar to those enumerated in the Hawaiʻi Constitution.  See, e.g., Johnson v. State, 617 P.2d 1117, 1124  (Alaska 1980); State v. Cox, 522 P.2d 29, 34 (Ariz. 1974); People v. Shapiro, 37 Cal. App. 3d 1038, 1042 (2d Dist. 1974); People v. Sousa, 18 Cal. App. 4th 549, 557 (1st Dist. 1993); Bernie v. State, 524 So.2d 988, 991 (Fla. 1998); People v. Carlson, 708 N.E.2d 372, 376 (Ill. 1999).

Unlike the U.S. Constitution, the Hawai'i Constitution contains "a specific provision expressly establishing the right to privacy as a constitutional right" in article 1, section 6.[14] State v. Mallan, 86 Hawai'i 440, 448, 950 P.2d 178, 186 (1998) (emphases in original). Further, unlike the Fourth Amendment, article 1, section 7 recognizes a right "against unreasonable . . . invasions of privacy," which "protects people from unreasonable government intrusions into their legitimate expectations of privacy." Navas, 81 Hawai'i at 122, 913 P.2d at 48. This provision was "designed to protect the individual from arbitrary, oppressive, and harassing conduct on the part of government officials." Id. (quoting Nakamoto v. Fasi, 64 Haw. 17, 23, 635 P.2d 946, 952 (1981)).

We have often recognized broader protections "[i]n the area of searches and seizures under article I, section 7" than our federal counterparts. Lopez, 78 Hawai'i at 445, 896 P.2d at 901. This is because article I, section 7 is "enforceable by a rule of reason which requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary." Id. at 446, 896 P.2d at

_____

[14]    Article 1, section 6 of the Hawai'i Constitution provides:

The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest.  The legislature shall take affirmative steps to implement this right.

28

902 (quoting <u>Kaluna</u>, 55 Haw. at 369, 520 P.2d at 58–59) (emphasis in original).

To ensure that governmental intrusions into citizens' privacy is no greater than absolutely necessary, we hold that an anticipatory search warrant must itself identify the triggering condition.

We find the reasoning of the Ninth Circuit Court of Appeals in a pre-<u>Grubbs</u> case, <u>United States v. Hotal</u>, 143 F.3d 1223 (9th Cir. 1998), to be persuasive. Faced with the same question presented here, the Ninth Circuit held that "when a warrant's execution is dependent on the occurrence of one or more conditions, the warrant itself must state the conditions precedent to its execution and these conditions must be clear, explicit, and narrow." <u>Id.</u> at 1226. It explained that anticipatory search warrants present a unique potential for abuse:

> [A] warrant conditioned on a future event presents a potential for abuse above and beyond that which exists in more traditional settings: inevitably, the executing agents are called upon to determine when and whether the triggering event specified in the warrant has actually occurred. Consequently, magistrates who are asked to issue such warrants must be particularly vigilant in ensuring that the opportunities for exercising unfettered discretion are eliminated.

<u>Id.</u> at 1226-27 (quoting <u>United States v. Ricciardelli</u>, 998 F.2d 8, 12 (1993)).

The Ninth Circuit explained that triggering conditions

serve the important role of "ensur[ing] that all parties [are] advised when the search may first take place, and the conditions upon . . . which the search is authorized and may lawfully be instituted."  Id. at 1227.  In this way, triggering conditions are similar to the particularity requirements, as both serve to "ensur[e] that the discretion of the officers executing the warrant is limited" and to "inform[] the person subject to the search of what items are authorized to be seized."  Id. at 1227.  Thus, the court stated that the warrant's identification of the triggering condition "is not merely 'efficient' or preferable," but is "the only way effectively to safeguard against unreasonable and unbounded searches."  Id.

We agree with the reasoning in Hotal that the triggering condition must appear on the face of the warrant to ensure that the executing officer does not exceed the scope of the warrant.  As the Grubbs concurrence explained, "a warrant that fails to tell the truth about what a magistrate authorized cannot inform the police officer's responsibility to respect the limits of authorization[.]"  547 U.S. at 100 (Souter, J., concurring).  It is particularly important that anticipatory search warrants clearly inform executing officers about triggering conditions because the triggering condition is integral to the judge's probable cause finding.  Scott II, 87

Hawaiʻi at 80 n.1, 951 P.2d at 1243 n.1 (citation omitted) ("By definition, [an anticipatory search warrant] is issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void.").

Anticipatory warrants' potential for abuse "assum[es] real significance when the warrant is not executed by the official who applied for it and happens to know the unstated condition." Grubbs, 547 U.S. at 100 (Souter, J., concurring). If the officer who executes the warrant is different from the officer who applied for the warrant, the executing officer may "simply take[] such a warrant on its face and make[] the ostensibly authorized search before the unstated condition has been met," thereby subjecting a private citizen to an unreasonable search. Id. at 100-01.

Further, as the Grubbs concurrence noted, a warrant that does not provide notice of the triggering condition adversely impacts "an owner's interest in an accurate statement of the government's authority to search property." 547 U.S. at 101 (Souter, J., concurring). HRPP Rule 41(d) requires that "[t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken

31

or shall leave the copy and receipt at the place from which the property was taken."  Consistent with this requirement, a warrant's clear identification of the triggering condition "reliably 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Grubbs, 547 U.S. at 101 (quoting United States v. Chadwick, 433 U.S. 1, 9 (1977)) (Souter, J., concurring).

This holding is consistent with the purposes underlying Hawaii's exclusionary rule:  judicial integrity, protection of individual privacy, and deterrence of illegal police misconduct. See State v. Torres, 125 Hawaiʻi 382, 394, 262 P.3d 1006, 1018 (2011).  Requiring triggering conditions in anticipatory warrants deters executing officers from conducting a search prior to the occurrence of the triggering condition and thereby acting beyond the scope of the authority granted of the judge.  By extension, this protects individual privacy by preventing unreasonable, arbitrary searches.  Lastly, this holding will enhance judicial integrity by preventing courts from "placing their imprimatur on evidence that was illegally obtained" pursuant to a constitutionally-deficient warrant.  Id. at 395, 262 P.3d at 1019 (citation omitted).

## IV.  Conclusion

For the foregoing reasons, we hold that anticipatory search warrants must identify the triggering condition. Accordingly, the ICA's February 23, 2016 judgment on appeal affirming the circuit court's denial of Petitioners' suppression motion is vacated, and the case is remanded to the circuit court for proceedings consistent with this opinion.

| | |
|---|---|
| Daniel Hempey<br>for petitioner Hall | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Michelle Premeaux<br>for petitioner Curtis | /s/ Sabrina S. McKenna |
| Tracy Murakami<br>for respondent | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

